# McGaw v. Hamilton.

*Libel—Privileged occasion—Province of court and jury.*

Whether a communication is or is not privileged by reason of the occasion, is a question for the judge alone, where there is no dispute as to the circumstances under which it was made. If there be any doubt as to these circumstances the jury must find what the circumstances in fact were, or what the defendant honestly believed them to be, if that be the point to be decided.

The question whether or not the slanderous words were uttered during the course of a debate in a legislative body is certainly not a question of law.

*Slander—Privileged and qualified privileged occasion—Discussion in councils.*

Granting that what is said in the course of debate of a pending measure in a borough council upon which members are to vote is absolutely privileged, no reason based on public policy requires that the same immunity should be extended to everything that is said in every irregular or disorderly discussion that may arise at the meeting of council; nor will custom import privilege to such discussions. The most that can be urged in defense of defamatory words uttered in such informal discussion of bor-

ough matters, as was shown in the case at bar, is that they are qualifiedly privileged and therefore the burden was on the plaintiff to prove that defendant was not acting in good faith but was actuated by express malice towards the plaintiff.

Argued April 24, 1900.   Appeal, No. 100, April T., 1900, by plaintiff, in suit of Homer L. McGaw against William J. Hamilton, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1896, No. 180, on verdict for defendant non obstante veredicto. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Reversed.   Opinion by RICE, C. J.   W. D. PORTER, J., dissents.

Trespass.   Before McCLUNG, J.

This case was before the Supreme Court which reversed the order of the court below refusing to take off nonsuit.   See report of the case of McGaw v. Hamilton, 184 Pa. 108.

### ESSENTIAL FACTS FOUND BY THE SUPERIOR COURT.

[The plaintiff had a claim against the borough of Elliot, upon which he had brought suit before an alderman and obtained judgment.   The borough appealed to the court of common pleas, and while the appeal was pending, at a regular meeting of the borough council, the president of the council, who was also chairman of the finance committee, made an oral report of his committee, who on the advice of the borough solicitor had taken up the plaintiff's claim and investigated it, recommending payment.   As it is of the highest importance in the discussion of the legal questions raised by the assignments of error to have as clear a view as possible of the precise circumstances under which the alleged defamatory words were uttered, we quote at some length from the testimony.

The chairman, a witness called by the plaintiff, testified as follows:

" Q.  You as chairman of the finance committee, reported to council that this case of McGaw against the borough, in the judgment of the finance committee, should be settled?   A.  That was the recommendation of the finance committee.   Q.  And you stated your reason and their reason for so recommending to council?   A.  Yes, sir.   Q.  The borough, or council, prior to that time, had refused, or it was stated there that the previous

council had refused payment of that account?   A.  They had.
Q.  You further stated at that time that you thought and the
finance committee thought that the borough could not succeed
in legally, or successfully, defending that suit?   A.  That was
the advice of our solicitor.   Q.  That was said at that time?
A.  Yes, sir.   Q.  And that if you went on and fought the case,
that the borough would finally lose it and have to pay additional
costs.   A.  Yes, sir.   Q.  And that was the reason for the finance
committee   recommending   the   payment   of   that   account?
A.  Yes, sir.   Q.  It was further stated at that time that the suit
was pending in court?   A.  Yes, sir.   Q.  And that you recom-
mend the settlement of that suit, and that was the matter under
discussion?   A.  That was the matter under discussion, yes.
Q.  You not only made that report, but you also suggested rea-
sons why it should be paid yourself, or why you thought it should
be paid, the claim settled? . . . . A.  That is right, yes, sir.
Q.  You not only made this report, but you were debating to
council and endeavoring to show why this matter should be
settled and the money paid to the plaintiff here, Mr. McGaw?
A.  Yes, sir."

Immediately after the chairman had presented the matter as
above stated, and before any motion had been made, the defend-
ant, a member of the borough council, arose and opposed pay-
ment of the bill.    In the course of his remarks or as some of the
witnesses testify, at the beginning of his remarks, he said, point-
ing directly at the plaintiff: " That man swore to a lie down at
the alderman's office," or " that man McGaw there swore to a
lie at the alderman's office."   James Harrison, another member
of council called as a witness by the plaintiff, described the oc-
currence as follows: " Yes, sir, that night the president of coun-
cil got up and stated that the finance committee had been
together, and through the advice of the borough solicitor, he
had advised the finance committee to settle that case of McGaw
against the borough, and that he had a good case.   There was
no motion or anything before council; Mr. Hamilton jumped
up right at the spur of the moment, and pointing right direct
at McGaw, he says, ' That man swore to a lie down at the alder-
man's office.' "

To show further the connection in which the words were
uttered, we quote from the testimony of P. H. Dugan, another

witness called by the plaintiff. On direct examination he said:

. "Q. State what took place, who brought the subject up and what followed. A. Mr. McCullough brought the subject up. Q. In what form? A. Well, as I recollect it, it was a report of the finance committee to council, and he recommended the payment of the bill, he said at the advice of the borough solicitor, that McGaw would beat the borough in the suit, and he recommended the payment of the bill in order to stop any further costs in the matter. Q. What, if anything, did Mr. Hamilton then say? A. Well, Mr. Hamilton got up and talked against paying the bill and among the remarks he made, he pointed in the direction where Mr. McGaw sat and said, 'That man swore to a lie in the alderman's office.'"

On cross-examination he testified as follows:

"Q. Didn't Capt. Hamilton rise and say that a prior borough solicitor had advised that that claim could not be recovered, and that they ought not to settle that case or pay the bill? A. I believe he did. Q. That a prior council had passed on that matter and determined not to pay it, and this council ought not to interfere in that matter? A. I think so, I think there was something like that. Q. Didn't he further say that that judgment before the alderman had been recovered on representation that council had ordered that printing to be done, and that council had not ordered any such thing? A. I think there was some remark of that kind. Q. And didn't he call for the reading of the minutes to show that no such motion as that had been made? A. Yes, sir. Q. And wasn't this remark about the man swearing to a lie. made in connection with that matter, in connection with the statement that council had never authorized that printing to be done? A. Well, I couldn't say just what connection it was made in. Q. Well, in the same general connection? Q. Yes, sir, I think it was."

Some of the plaintiff's witnesses were not as distinct in their recollection of the occurrences and did not go to the same extent into the details. It is not necessary to repeat their testimony, or, in the present aspect of the case, to refer to that of the defendant. The foregoing quotations fairly present the circumstances under which the defamatory words were uttered, as they were developed in the presentation of the plaintiff's case.]

Verdict for plaintiff for $200. The court subsequently entered judgment in favor of defendant non obstante veredicto. Plaintiff appealed.

*Error assigned* was in entering judgment in favor of defendant notwithstanding the verdict of the jury.

*William A. Sipe*, for appellant.—The question whether or not the plaintiff's bill should be paid, did not call for any discussion of the testimony given by the plaintiff before the alderman, nor did the slanderous language applied by the defendant to the plaintiff furnish any information to council which the defendant, in the discharge of a public duty, as a member of council, ought to make known, and, therefore, the slanderous language was wholly irrelevant to the question before council.

The words charged the plaintiff with having testified to a falsehood in a judicial proceeding before a magistrate. What had such a charge to do with the pending matter? There was no fitness of the plaintiff for pending appointment to office before council. His private character was not at issue in any point of view. The statements must be pertinent and relevant: Kean v. McLaughlin, 2 S. & R. 469; White v. Carroll, 42 N. Y. 161; Smith v. Howard, 28 Iowa, 51.

The law with respect to malice, when privilege is set up as a defense to an action of slander, is fully set forth by Justice Paxson in the case of Briggs v. Garrett, 111 Pa. 415. See also White v. Carroll, 42 N. Y. 161.

Where the words spoken are prima facie privileged, and, therefore, require proof of malice, malice may be shown by proof of the falsity of the words: Starkie on Slander (ed. of 1877), p. 401; Blagg v. Sturt, 10 Ad. & El. 899.

Malice may be shown by evidence of the defendant's ill-will toward the plaintiff: Odgers on Libel and Slander, 271; Morgan v. Livingston, 2 Rich. (S. C.) 573.

Legislative bodies and judicial proceedings stand on the same footing with respect to the rule relating to privileged occasions. The authorities bearing upon the subject, and decisions rendered under judicial proceedings, apply with equal force to legislative bodies: White v. Nicholls, 44 U. S. 266.

The jury has found that he was moved by anger and malice,

and under the law as laid down and applied by the Supreme Court of Pennsylvania and by the courts of other states as appears from the cases cited, he cannot shield himself under the cloak of privilege. The language used by the defendant, its irrelevancy to the question before council, the want of probable cause, constitute a chain of circumstances which clearly indicates that the defendant availed himself of the occasion to wilfully defame and injure the plaintiff, and he should be held answerable for his conduct.

It would be difficult to conceive a case in which the abuse of the liberty given by a privileged occasion would work a greater injustice or inflict a greater wrong than in the present case, if the defendant in this case be protected on the ground of privilege.

If the defendant is to be protected against prosecution under the plea of privileged occasion in this case, then any one who can secure his election as a member of councils of a city or borough, may defame and villify another from motives of anger, ill-will or jealousy, and the injured party will have no remedy.

It would be a monstrous law that would uphold and sustain the malicious conduct of a libeler or slanderer, and a great travesty on justice to place a shield around him under the doctrine of a privileged occasion.

*A. N. Hunter* and *John P. Hunter*, for appellee.—The real and only question here presented is whether the doctrine of absolute privilege exists in actions for slander.

In Lord Abington's Case, 1 Esp. Rep. 226, the rule is laid down that a member of parliament cannot be held liable in an action for slander for words spoken in debate.

This was followed in Rex v. Wright, 8 Tr. Rep. 293, where the same doctrine was affirmed by Lord Kenyon. It was again recognized in Rex v. Creevey, 1 M. & S. 272, 280.

In Stevens v. Sampson, 5 L. R. Ex. D. 53, Lord Coleridge discussed the difference between a qualified and an absolute privilege: Munster v. Lamb, 11 Q. B. Div. 588, 604; Kennedy v. Hilliard, 10 Irish C. L. Rep. 195, 209. To the same effect is Coffin v. Coffin, 4 Mass. 28, and Hastings v. Lusk, 22 Wendell, 410. The same doctrine is recognized in Pennsylvania: Vigours v. Palmer, 1 Browne, 40.

In Kean v. McLaughlin, 2 S. & R. 469, a defendant in a suit before a justice turned towards the plaintiff who had just finished his testimony and said, " You have sworn a manifest lie." Held actionable : McMillan v. Birch, 1 Binn. 178.

Whether the remarks were relevant, and the question one of absolute privilege, was for the court and not for the jury : Odgers on Libel and Slander, 185.

OPINION BY RICE, P. J., October 8, 1900 (after stating the facts as found in the statement of facts) :

The learned trial judge instructed the jury that the plaintiff could not recover unless the evidence satisfied them that the words were spoken of and concerning the plaintiff, and that in uttering them the defendant " was impelled, not by his obligation of duty as a member of council, but by actual malice against the plaintiff." We quote further from the charge : " If, on the other hand, the impelling motive which caused him to make the charge was not a desire honestly to perform his duty to the borough, but was a desire to vent his malice and spleen upon the plaintiff, then he would be liable, just as if he had not been a member of council. And that, I say, is the point of this case. Did he do it in the honest belief that it was necessary in the proper performance of his duty as a member of council? If he did, there can be no recovery. And in this view of the case, it does not matter whether he was a friend or enemy of the plaintiff. He was under just as much obligation to protect the borough against a party whom he did not like as to protect the borough against a party who was a friend of his. The question of their relations is only of moment here in so far as it helps to solve the question whether his impelling motive in making this declaration was a sense of duty to the borough, or was malice towards the plaintiff." As the jury found in favor of the plaintiff, and as there was affirmative evidence outside the occurrences above narrated to warrant the submission to them of the questions of malice and good faith (see 184 Pa. 116), the question for our consideration is, whether or not the defendant was exempt from liability to action on the ground of privilege, even though in uttering the defamatory words he was not acting in good faith but was actuated by express malice towards the plaintiff ?

The law recognizes two classes of cases in which the occasion either supplies an absolute defense, or a defense subject to the condition that the party acted bona fide without malice. The distinction turns entirely on the question of malice. The communications last mentioned lose their privilege on proof of express malice. The former depend in no respect for their protection upon the bona fides of the defendant. The occasion is an absolute privilege, and the only questions are whether the occasion existed, and whether the matter complained of was pertinent to the occasion. The foregoing statement of general principles is taken from 2 Bouvier's L. Dict. (Rawle's ed.) 756, and is sustained by the authorities. Whether a communication is, or is not, privileged by reason of the occasion, is a question for the judge alone, where there is no dispute as to the circumstances under which it was made. If there be any doubt as to these circumstances, the jury must find what the circumstances in fact were, or what the defendant honestly believed them to be if that be the point to be determined; and then on their findings, the judge decides whether the occasion was privileged or not: Odgers on Libel and Slander, * 185; Briggs v. Garrett, 111 Pa. 404. The same is true where the pertinency of the utterance to the occasion is the question.

The learned trial judge decided upon the defendant's motion for judgment non obstante veredicto that under the undisputed facts of this case the occasion was absolutely privileged, and that the defendant's statement was pertinent to the occasion. He states the case thus: "The words upon which the action is based, according to the undisputed testimony, by witnesses of both plaintiff and defendant, were spoken by a member of a borough council, at a meeting of the council, in the discussion of a matter regularly before the house, and with respect to a matter which was open for discussion and upon which it was the duty of council to pass. The statement was of a matter of which, if true, it was proper and important that the members of council should be informed." This summary of the facts and the legal conclusion based thereon are attacked on the grounds: first, that the matter of the plaintiff's claim was not regularly before the council for action, therefore the occasion was not privileged; second, that the defamatory words spoken by the defendant were not pertinent to the occasion;

and third, that the occasion was at the most, one of qualified, not absolute, privilege, therefore the plaintiff could maintain the action upon proof of express malice.

Was the matter of the plaintiff's claim regularly before the council for discussion and action? In disposing of the appeal taken from the judgment of nonsuit entered on the first trial of this case, Justice GREEN, speaking for the Supreme Court said, that, "even in the recognized cases of absolute privilege, it is not enough that the slanderous words were uttered in a legislative hall or in a court of justice to establish a claim to absolute privilege. A further reference must be had to the circumstances and to the occasion of the particular occurrence, before the question can be determined:" 184 Pa. 108. We have given the circumstances under which the words were uttered, and if the case rested here our duty would be plain. Upon substantially the same evidence the Supreme Court held it to be error for the trial court to assume as an undisputed fact that the words were uttered in the course of debate on a matter regularly before the council for discussion and action. We quote from Justice GREEN'S opinion: "Now the question whether the slanderous words were uttered during the course of a debate in a legislative body is certainly not a question of law. If it were an undisputed question of fact, the court might pronounce upon it." Again he says: "We have already alluded to the testimony as bearing upon the question whether the words were uttered in debate upon a pending motion. The weight of the evidence on that subject is in the negative, and hence its solution would have to be referred to the jury." The plain implication from these remarks is that if the jury decided this question in the negative, the court could not declare as matter of law that the defamatory words were absolutely privileged even though they were uttered at a regular meeting of council and were pertinent to the matter contained in the oral report submitted by the chairman of the committee.

It is thought that the case presents a different aspect now from what it did when it was first tried, because it was shown on the trial before us for review that it was the usage in the meetings of this council to discuss matters affecting the borough without any motion being made, and then make a motion afterwards. It is not clear that the question whether there

was or was not such a usage was not for the jury. For while one member of council testified to the effect above stated, another member testified, as we have shown, that "there was no motion or anything before council," thus inferentially declaring that the remarks were out of order under the usages of council. Granting, however, that there was such a usage, how does that affect the question? It is to be observed that there is no evidence that the matter of the plaintiff's claim had been referred to the finance committee by the borough council. So far as appears their recommendation that the claim be paid was purely voluntary. It bound no one, and in legal effect upon the question now for determination was the same as if the chairman had made the recommendation upon his own responsibility. It did not of itself call for any action on the part of the borough council. It was to be expected, perhaps, that at that, or some subsequent meeting, a motion might be made to carry out the recommendation of the committee, but no such motion had been made, and there was no certainty that one would be made. Until it was made there was nothing before the meeting calling for the action of council, and the recommendation of the committee and the remarks of the president in support of it went for naught. Therefore, it is no clearer now than it was on the first trial that the defamatory words were uttered in the course of debate upon a pending matter upon which it was the duty of council to act. If the uncontradicted evidence had been that under the usage of this council the matter was before council for its action, as for example that a vote might be called for by the chairman or by any member without formal motion, or that his oral report was equivalent to a motion, a different question would be presented. It might then be argued with some plausibility that the privilege of the members was the same as if a formal motion had been made. But as the case stands, the court could not declare as a matter of law from the undisputed facts that the occasion had arisen in which from reasons of public policy—to secure freedom of debate upon matters pending in council affecting the borough—the law gives to members of such a body absolute immunity from liability for false and defamatory utterances where the impelling motive of the same was not a sense of duty to the borough, but actual malice towards the plaintiff,

It must be always borne in mind that the rule as to absolute privilege is not to protect malicious and untruthful persons but that it is intended to protect persons acting bona fide, who under a different rule would be liable, not perhaps to verdicts and judgments against them, but to the vexation of defending actions: Munster v. Lamb, 11 Q. B. Div. 588. Or as the idea was expressed by another judge in the same case, it is better to make the rule so large that an innocent person shall never be troubled, although by making it so large persons are included who have been guilty of malice and misconduct. It is deemed better that innocent individuals shall suffer unjust defamation of character rather than that the privileges of debate should be curtailed. We do not question the wisdom of the rule as applied to debates in even such minor legislative bodies as borough councils. This is fully vindicated in the able opinion of the learned judge of the court below. We do however question the wisdom of extending the rule to cases not fairly within its reason. There are not many cases in which public policy forbids the plaintiff to prove that the defendant did not act under the privilege, that he did not intend honestly to discharge a duty, but maliciously availed himself of the occasion to injure the plaintiff's reputation; nor, it has been justly said, is it desirable that there should be many. The courts refuse to extend their number: Stevens v. Sampson, 5 L. R. Ex. Div. 53 : Odgers on Libel and Slander, *185. Granting that what is said in the course of debate of a pending measure in a borough council upon which the members are to vote is absolutely privileged, no reason based on public policy requires that the same immunity should be extended to everything that is said in every irregular or disorderly discussion that may arise at the meetings of council. Nor does the fact that it is customary in a particular borough council for the members to engage in such discussion of matters that may come up for action but are not then pending, and may never arise, require that the rule as to absolute privilege be extended thereto. The most that can be urged in defense of defamatory words uttered in such informal, not to say irregular and disorderly discussion of borough matters as was shown in this case is, that they are qualifiedly privileged and therefore the burden was on the plaintiff to prove that the defendant was not acting in good

faith but was actuated by express malice towards the plaintiff. It follows that there was error in entering judgment for the defendant notwithstanding the verdict.

The judgment is reversed and judgment is now directed for the plaintiff on the verdict.

W. D. PORTER, J., dissents.