Montgomery *v*. Dennison et al., Appellants.

Argued September 29, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*J. Roy Dickie,* with him *Dickie, Robinson & Mc-Camey,* for appellants.

*Zeno Fritz,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, November 21, 1949:

The defendants in an action of trespass for libel appeal from the refusal of the court below to grant a new trial where an adverse judgment was rendered against them jointly and severally in the amount of $100 for compensatory damages and $2,500 for punitive damages which amount was reduced by remittitur from $5,000. Two questions are presented. First, whether the action of the defendants in publishing the letter which constituted the libel amounted to an abuse of an otherwise conditionally privileged communication; and secondly, whether the judgment for punitive damages can be sustained where no express malice was proved?

The plaintiff at the time of the alleged libel and for a long time prior thereto served as Captain of the Guards at the United States Court House in Philadelphia. He had thirty-nine guards working under his supervision. These guards policed the federal building in Philadelphia, and plaintiff as their captain had access at all times to the various federal offices in that building, such as the federal court rooms and judicial offices, as well as the office of the F. B. I. and the Internal Revenue Department. He was a member of the National Association of Post Office Custodial Employees and president of this organization's local branch, and editor of its national official publication, "Post Office Custodian."

G. H. Dennison, the individual defendant, is a director and manager of the corporate defendant, the Bet-

ter Business Bureau of Pittsburgh, Inc., a Pennsylvania non-profit corporation. Among the Bureau's various corporate purposes are to "promote truthfulness and reliability in advertising and merchandising of all kinds by encouraging methods that are honorable and discouraging those that are fraudulent and deceptive, and to investigate and report on every form of solicitation to which the public may be subjected, i. e., charity, advertising, and financial, and where fraudulent or deceptive individuals or methods are revealed to give publicity thereto and to aid in procuring legal action against them."

Sometime prior to June 7, 1945, Dennison had acquired information from letters and newspaper clippings regarding two men, Harris and Bloom, who were known in many cities as solicitors of advertisements. From this information Dennison concluded that these individuals had been engaged in several fraudulent schemes and were securing advertising contracts through unfair and illegal means. On June 4, 1945, a person who referred to himself as "Mr. Callahan" and as a "former business associate of Harris and Bloom" telephoned Mr. Dennison from Harrisburg, informing him that Harris and Bloom had entered into a contract with the "Post Office Custodian", the official publication of the National Association of Post Office Custodial Employees, for the purpose of soliciting advertising for this journal, and further advising Dennison that plaintiff, editor of the journal, had received $1,000 from Harris and Bloom to sign the contract. The tenor and purport of the information was that Mr. Montgomery had accepted a bribe for the purpose of committing the national official publication to this advertising contract. Relying on this information and without any acquaintance with Montgomery, Dennison wrote a letter to Jesse M. Donaldson, Chief Post Office Inspector at Washington, D. C., now Postmaster General of the United States, in which Den-

nison referred to Harris and Bloom as "a vicious and persistent combination". This letter contained the following paragraph which constitutes the basis of the present action: "We were informed on June 4 (and have not yet had an opportunity to confirm these statements) by a Mr. Callahan, who represented himself as an employee of Harris and Bloom, that this firm had paid a man named Montgomery $1,000 to sign a contract whereby the promoters were to become the official representatives of the subject Association. Montgomery is connected with the Philadelphia Post Office, presumably as a janitor, and is editor of the subject publication." Copies of this letter were mailed to the General Managers of the Scranton Better Business Bureau and the Philadelphia Better Business Bureau, respectively, the Postmaster at Pittsburgh, the United States Attorneys at Philadelphia and Pittsburgh, and to two officers of the National Association of Post Office Custodial Employees. All copies were typed on the Pittsburgh Better Business Bureau stationery and were signed by Dennison as its General Manager. The original letter is now in the "John D. Montgomery Personnel File" filed in the United States Post Office Department at Washington.

The trial developed the following facts: Montgomery as editor of the Post Office Custodian did on April 30, 1945, enter into a written contract with Harris and Bloom. Under the terms of the contract Harris and Bloom had the exclusive authority to solicit ads for the "Post Office Custodian", had authority to pay from the proceeds certain expenses, and the profits were to be divided equally between Harris and Bloom and the National Association of Post Office Custodial Employees. Plaintiff testified that he received nothing for entering into this contract and that there was nothing fraudulent about the contract. This testimony was undisputed.

As soon as plaintiff learned about the letter he met Chief Post Office Inspector Donaldson at Washington

and informed him that the charge was unfounded. This official told Montgomery that it was his duty to protect the government from fraud and that he would have to make an investigation. Montgomery then went to Pittsburgh, consulted a lawyer and had a conference with Dennison. Montgomery demanded that Dennison make a retraction and undo as far as possible the harm that he had done him. Plaintiff claimed that Dennison offered to make a retraction. Dennison denies this, and declared that he wanted to investigate whether or not this plaintiff was acting in good faith. Plaintiff testified that his reputation suffered from the defamatory letters Dennison sent out to about ten people. He also claimed that he paid out $50 for attorney fees, $40 for a trip to Pittsburgh and $8 or $9 for other expenses.

The trial judge correctly told the jury that if Dennison could prove that Montgomery did receive $1,000 for entering into this contract, that would constitute an absolute defense. There was no such proof.

The trial judge further told the jury that the paragraph of the offending letter was capable of a defamatory meaning, and added: ". . . I submit to you, members of the jury, to determine whether or not the contention of the plaintiff is right, that the meaning of that paragraph is that the plaintiff, Montgomery, did a dishonest act in receiving a thousand dollars in order to enter into a contract."

The trial judge said to the jury: ". . . before an action of libel is made out, it must appear that the conduct of the defendant is malicious. Malice . . . may be either express or implied . . . it is also proper for a jury to find in a case of this type, if the evidence warrants it, that there was malice even though there is no express evidence of it: In other words, the circumstances may be sufficient to warrant the jury coming to the conclusion, that the defendant was motivated by malice." The court thereafter pointed out that there were two circumstances urged by plaintiff as sufficient

grounds for the conclusion that the defendant acted maliciously; one was that the defendant did *not* have reasonable and probable grounds on which to base a belief that what he stated in the letter was true; secondly, that the jury would be justified in concluding that the meaning of the paragraph in question was that Montgomery had done a dishonest act.

As to the defendants' claim of privilege the trial judge charged the jury: "The privilege on which the defendant stands in this case is a conditional privilege. . . . It is argued here that the Better Business Bureau had certain information with reference to this plaintiff and it was part of their duty to protect the members of this Association of custodians down in Philadelphia, and that the proper way to do that was to notify officers in charge of that Association that some endeavor, which they may have believed, had existed to get money fraudulently from that Association. . . . if you believe there was <u>reasonable and probable cause to send the letters,</u> then, under those circumstances, this defendant brings himself within a privilege in the law and you should not find a verdict in the case for the plaintiff unless you find that the defendant abused that privilege.

"Now if the defendant establishes his privilege, then there are different ways within the law that a privilege can be abused. The ground on which the plaintiff stands in this case to establish abuse of the privilege is this: it is claimed that even though the defendant may have had a privilege, when he sent this word out about Montgomery, he did not have <u>reasonable ground for believing the truth of the statement.</u>"

The jury justly negatived the contention of the appellants that the letter complained of was not libelous and was a privileged communication. In *Hartman v. Hyman & Lieberman*, 287 Pa. 78, 83-84, 134 A. 486, Mr. Justice SIMPSON said: "It has often been said that a

privileged communication is one made upon a proper occasion, from a proper motive, in a proper manner and based upon reasonable or probable cause: (citing cases) The immunity of a privileged communication is the exception, and he who relies upon an exception must prove all the facts necessary to bring himself within it: (citing cases) Want of reasonable care and diligence to ascertain the truth, before giving currency to an untrue communication, will destroy the privilege: (citing cases." In *O'Donnell v. Phila. Record Co.,* 356 Pa. 307, 315, 51 A. 2d 775, this Court quoted with approval the above quoted statements.

The appellants in their paper book contend that the instant case "is on all fours with the leading case of Briggs v. Garrett, 111 Pa. 404." The circumstance which removes this "all four" support is the statement by this Court in that case at page 412: "He [Garrett] received a letter from a reputable citizen, addressed to him as chairman of the committee [of One Hundred] containing certain statements about Judge BRIGGS, then a candidate before the people for re-election." In the instant case Dennison received a telephone report prejudicial to Montgomery from a person who was disreputable enough to conceal his identity. Whether or not he *was* "Mr. Callahan", and where he came from and what was his business, and where he got his information, were not disclosed to Mr. Dennison; and the latter, without seeking such necessary further enlightenment on the subject matter, zealously acted at once to Mr. Montgomery's harm on such obviously unreliable information.

Section 613 of Vol. III of the Restatement of the Law of Torts declares: "(1) In an action for defamation the *plaintiff* has the burden of proving, when the issue is properly raised, (a) the defamatory character of the communication, (b) its publication by the defendant, (c) its application to the plaintiff, (d) the recipient's

understanding of its defamatory meaning, (e) the recipient's understanding of it as intended to be applied to the plaintiff, (f) special harm resulting to the plaintiff from its publication, (g) abuse of a conditionally privileged occasion." In the instant case the plaintiff sustained the burden of proving (1) (a), (1) (b), (1) (c), (1) (d), (1) (e) and (1) (f). The burden then shifted to the defendant.[1] In *Conroy v. Pittsburgh Times*, 139 Pa. 334, 21 A. 154, Justice MITCHELL said: "The natural and logical order of proof is for defendant to show the information on which he relied for probable cause, and for the plaintiff then to meet it in rebuttal. And this is the order that seems to be indicated by BRACKENRIDGE, J., in Gray v. Pentland, 2 S. & R. 23. . . ."

Section 613 (2) of the Restatement declares: "(2) In an action for defamation the *defendant*[2] has the burden of proving, when the issue is properly raised, (a) *the truth of the defamatory communication*, (b) *the privileged character of the occasion on which it was published*, (c) the character of the subject matter *of*

---

[1] This Court in *Henes v. McGovern*, 317 Pa. 302, 176 A. 503 (quoting with approval from an English case) said: " '. . . it is obvious that during the controversy in the litigation there are points at which the onus of proof shifts, and at which the tribunal must say, if the case stopped there, that it must be decided in a particular way.' "

[2] It is manifestly the fair thing to place upon the defendant the burden of proving the three things which the Restatement casts upon him to prove, for if the statement he made is true and if the occasion was privileged the knowledge of those things are peculiarly within the possession of the man who makes the defamatory statement. It is fundamental in Anglo-Saxon jurisprudence that any man accused of wrong-doing is presumed innocent until proved guilty. This is the rule not only in our criminal courts but in the ordinary affairs of life. It therefore follows that if one man charges another with wrong-doing he is expected to prove either its truth or the privileged character of the occasion on which he makes the charge.

Wigmore on Evidence, 3rd Ed., Vol. IX, §2486, p. 276, says: ". . . in an action for defamation . . . as a matter of fairness, it [the burden] has in fact been put upon the defendant to prove the truth of his utterance."

*defamatory comment as of public concern."* (Italics supplied). The defendant failed to prove what was just referred to under (2)(a) and (2)(b). Section 619 of the Restatement provides: "(1) The court determines whether the occasion upon which the defendant published the defamatory matter was privileged. (2) Subject to the control of the court whenever the issue arises, the jury determines whether the defendant did or did not abuse a conditionally privileged occasion."

Comment (f) of Section 613 of the Restatement reads as follows: "If the defendant relies upon the defense of absolute privilege, he has the burden of proving it. *If he establishes this defense, it is a complete bar to recovery.* If he relies upon the defense that the communication was published upon a conditionally privileged occasion, he likewise has the burden of proving it. *If he sustains this burden by evidence of the requisite quantity and quality, he will prevail unless the plaintiff takes up and sustains the burden of proving that the occasion was abused.* The occasion may be abused because of the publisher's *lack of belief or reasonable grounds for belief in the truth of the defamatory matter;* because the defamatory matter was published for some purpose other than that for which the particular privilege is given; *because the publication was made to some person not reasonably believed to be necessary for the accomplishment of the purpose* [3] *of the particular privilege;* or because the publication included defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the privilege is given." (Italics supplied)

In *McGaw v. Hamilton,* 15 Pa. Superior Ct. 181, the Superior Court in an opinion by President Judge RICE said: "Whether a communication is, or is not, privileged

---

[3] That excessive publication may be an abuse of privilege was recognized in *Montgomery Ward & Co. v. Watson,* 55 F. 2d 184 (C. C. A. 4th).

by reason of the occasion, is a question for the judge alone, where there is no dispute as to the circumstances under which it was made. If there be any doubt as to these circumstances, the jury must find what the circumstances in fact were, or what the defendant honestly believed them to be if that be the point to be determined; and then on their findings, the judge decides whether the occasion was privileged or not: Odgers on Libel and Slander, *185; Briggs v. Garrett, 111 Pa. 404. . . ." In *McGeary v. Leader Publishing Co.*, 52 Pa. Superior Ct. 35, 48, it was held that: "Probable cause that would justify a publication charging an indictable offense, would justify a prosecution for the alleged crime: Neeb v. Hope, 111 Pa. 145, [2 A. 568]; Briggs v. Garrett, 111 Pa. 404, [2 A. 513]. It does not depend on the actual state of the case in point of fact, *but upon the honest and reasonable belief of the party prosecuting or publishing the charge.* It has been defined to be a reasonable ground of suspicion, supported by circumstances sufficient to warrant a cautious man in believing that the party is guilty of the conduct imputed to him: Smith v. Ege, 52 Pa. 419. The probable cause that will warrant belief must be found in circumstances of adequate probative force, lying within personal knowledge *or information derived from sources of such a character as to lead a reasonably prudent man to regard it as trustworthy:* Com. v. Swallow, 8 Pa. Superior Ct. 539. . . ." (Italics supplied.)

The anonymous information Dennison acted on clearly did not constitute probable cause for the action he took. What Judge ORLADY speaking for the Superior Court in *Collins v. News Co.*, 6 Pa. Superior Ct. 335, 336, said is particularly applicable here: "It was not a privileged communication. The authorities on which the appellant relies to sustain the argument that it was such, are considered in Coates v. Wallace, 4 Pa. Superior Ct. 253, and cannot relieve the defendant in this case. It is

not sufficient that the defendant believed the facts to be true at the time of publication; *the belief must have rested on reasonable and probable cause*: Winebiddle v. Porterfield, 9, Pa. 137; Chapman v. Calder, 14 Pa. 365; Smith v. Ege, 52 Pa. 419." (Italics supplied.)

If the stage had been reached in this case (but it was not so reached) where the burden shifted to the plaintiff to prove the abuse of a conditionally privileged occasion the jury might well have found that the defendant had abused the occasion by his over-publication of the communication from "Mr. Callahan"; that is by its publication to eight other persons in addition to the Chief Post Office Inspector Donaldson. Among these others were the respective managers of the Pittsburgh and Scranton Better Business Bureaus, and the Postmaster at Pittsburgh (who had no direct interest in the matter) and the United States District Attorney at Pittsburgh. If Mr. Dennison believed the telephonic communication he received from the mysterious Mr. Callahan he need not have done more than to have reported the matter to Chief Post Office Inspector Donaldson, who presumably would have made a thorough investigation of the charge and would have taken whatever steps the results of that investigation called for.

That there was basis for the inference that defendant was motivated by malice is indicated not only by the excessive action he took on a mere anonymous communication but also by his contemptuous reference to Montgomery as being "connected with the Philadelphia Post Office, presumably as a janitor." That Montgomery occupied a position of trust and confidence is indicated by the facts set forth in the second paragraph of this opinion. Dennison's refusal to retract his statement after Montgomery assured him that it was not true is also indicative of Dennison's malice. Montgomery's face to face denial of the charge certainly should have

weighed in Dennison's estimation at least as much as the accusation made by "Mr. Callahan."

It is the contention of the appellant that there is no basis for punitive damages in this case. The contention is untenable. In *Bausewine v. Norristown Herald,* 351 Pa. 634, 41 A. 2d 736, this Court permitted the recovery of damages in the sum of $8,750 in a libel suit based upon the alleged libeling of the plaintiff in a newspaper article which implied that he had at one time been engaged in the business of "guarding" trucks which were engaged in the transportation of illicit liquors.[4] We said in that case, in an opinion by Mr. Justice JONES: "Punitive damages were especially indicated because of the proofs of actual malice, which had been openly avowed and deliberately carried out. And, the continued existence of the actual malice was further accentuated by the defendant's failure to make good its plea of truth and justification and, particularly, by its persistence in that plea (at the new trial obtained on its motion) after a jury had already discountenanced the plea and had rendered verdicts for the plaintiff in quite substantial sums. See Will, etc., v. Press Publishing Co., 309 Pa. 539, 544, 164 A. 621."

In plaintiff's statement of claim he declared that he had been "greatly injured and damaged in his good name, fame, credit, and reputation, and has been brought into general scandal, infamy and disgrace with and amongst the officers and members of the said National Association of Post Office Custodial Employees . . . and disgrace with and amongst his superiors, his associates, his fellow-employees and his neighbors and other good and worthy citizens of this State and of the United States."

The plaintiff was entitled to recover damages not only for actual expenditures which amounted to about

---

[4] There was also another recovery of $3,750 for another alleged libel by the same defendant against the same plaintiff. Both cases were consolidated for trial.

$100, but also for "the harm which normally results from such a defamation" which is called "general damages": Section 621 of the Restatement. Section 623 also says: "[One who is liable to another for a libel or slander is liable also for emotional distress and bodily harm resulting therefrom which is proved to have been caused by the defamatory publication or, in the absence of such proof, for such emotional distress as normally results from such a publication.]"

The trial judge did not make clear plaintiff's right to "general damages." In his charge he told the jury that "in a case of this type there are sometimes two different kinds of damage that a plaintiff may recover, depending upon the evidence: One is called compensatory damage and the other is called punitive damages. Now, compensatory damages are damages allowed to compensate the plaintiff for some loss; in this case the loss he has suffered in his reputation and this one hundred dollar expense,[5] if you believe that was caused by the conduct of the defendant. . . . If you allow compensatory damages then say a certain amount for compensatory damages. and another amount for punitive damages." This was not an adequate charge in respect to the general damages which the plaintiff stressed in his statement of claim (as above quoted). Plaintiff said nothing in his Statement of Claim about "$100 expenses." The trial judge further said: "Punitive damages are damages which a jury may give in a proper case by way of penalty to the defendant. In other words, it is punishment. You give punitive damages, perhaps, to teach a lesson to somebody not to do this sort of thing again. The plaintiff in this case, in addition to claiming compensatory damages, asks you to give puni-

---

[5] This "$100 expense" should have been treated by the trial judge as "special harm". See section 622 of the Restatement of the Law of Torts, Vol. III.

tive damages too. He says the conduct of the defendant in this case justifies your giving punitive damages."

The jury returned a verdict for "punitive damage in the amount of $5,000" in addition to the $100 "compensatory damage." After argument the court en banc ordered that plaintiff file a remittitur for the amount of his verdict in excess of $2,500, otherwise a new trial would be granted. The court in its opinion refusing defendants' motions for judgment non obstante verdicto and for a new trial stated: ". . . the jury was justified in finding that Dennison was recklessly indifferent to the harm which Montgomery might suffer as a result of the letter. This and his repeated refusal to make a retraction and the plea of justification persisted in through two trials furnish just grounds for punitive damages."

That the defendant Dennison is engaged in the commendable business of protecting the public against imposters who prey upon citizens gives him no immunity to recklessly stigmatize unoffending citizens as frauds. Dennison's training and experience should have made him alert in distinguishing between well-supported and ill-supported accusations; his warring against frauds should have made him cautious in putting the fraud label on anyone on evidence which was discredited by the anonymity of its origin. It does not require either superior intelligence or extensive experience to acquaint one with the fact that no reliance whatever can be placed on anonymous communications charging others with substantial wrong-doing. Anyone who accuses another of wrong-doing but is not willing to stand behind his accusations and furnish evidence to support it commands respect neither for himself nor for his accusations. If honorable reputations can be blasted by "broadcasting" charges received either by telephone or by letter from persons unknown, no individual's reputation is safe. Any fair man before crediting any calumniating statement made against another will ask the defamer

to either confront the individual calumniated or to furnish competent evidence in support of the defamatory statement. When recklessness in conduct or spoken or written communications cause harm to another, the party responsible must answer in damages. It has often been said by this court that malice does not necessarily mean a particular ill-will toward another; it comprehends in certain cases *"recklessness of consequences* and a *mind regardless of social duty."* [6]

That Dennison was apparently acting in behalf of the Better Business Bureau of Pittsburgh in publishing the anonymous communication he received does not lessen his offence. Rather, it aggravates it. The fact that he was acting in the capacity stated added weight to the publication of the accusation. If he had written to Chief Inspector Donaldson and the eight others merely as an individual his accusation would have been much less impressive. For example, if a member of the F.B.I. would write to the Attorney General of the United States stating that he had heard from a "Mr. Callahan" that a certain "vicious combination" (giving the names) had paid $1,000 to some Federal official to influence the latter's official action, such a communication would receive attention proportionate to the importance of the position of the man who made it.

It was damaging to this plaintiff who occupies a position of trust under the Government of the United States to have Dennison calumniate him to his official superiors and to the Secretary of the National Association of Post Office Custodial Employees of which he was a sufficiently prominent member to be elected president of the Philadelphia local of that organization, as having obligated the National Association's publication of which he

---

[6] For example, in perjury cases where a person under oath gives testimony *in reckless disregard of its truth or its falsity* it is equivalent to giving testimony with knowledge of its falsity : *Commonwealth v. Billingsley,* 160 Pa. Superior Ct. 140, 50 A. 2d 703.

was editor, to a contract with "a vicious and persistent combination" in return for a bribe of $1,000. Any individual's reputation for integrity is his greatest asset. He who attempts to destroy that reputation is doing something which meets with the condemnation of the law and of all persons who believe in fair dealing between man and man.

The lower court correctly said that "The verdict against the corporate defendant must stand. It is in the same position as Dennison insofar as malice is concerned. The jury was permitted to find, and did find, that Dennison was the manager and director of the corportation, was acting for the corporation and within the scope of his duties when the letters were sent. Nothing more need be shown. (Hardoncourt v. North Penn Iron Co., 225 Pa. 379, 380, 381.)"

The judgment of the court below is affirmed.