# Neeb *versus* Hope.

1. Any malicious publication, written, printed or painted, which by words or signs tends to expose a person to contempt, ridicule, hatred or degradation of character is a libel, and the person libelled may recover damages, unless it be shown that the publication was true, or that it was justifiably made.

2. Malice is an essential element in an action for libel, but it is malice in a special and technical sense, which exists in the absence of lawful excuse, and where there may be no spite or ill-will or disposition to injure others. Whenever a wilful and unprivileged publication is made, having the other qualities of a libel, legal malice may be inferred.

3. Where one published words which injured the reputation of another he must be taken to have intended the consequences naturally resulting therefrom, and the question whether he acted maliciously or not should not be left to the jury unless the occasion be privileged.

4. It is a matter of law for the court to determine whether the occasion of writing that which would otherwise be actionable repels the inference of malice, and thus constitutes it a privileged communication. If it be a privileged communication and there is no intrinsic or extrinsic evidence of malice, it is the duty of the court to direct a nonsuit for the defendant. If, however, the communication contains expressions which exceed the limits of privilege, such expressions are evidence of malice and the case must be given to the jury.

5. Compensation for the injury done to the plaintiff's reputation is the

1 AMERMAN—10

[Neeb *v.* Hope.]

legal measure of damages to which he is entitled in an action for libel. It is for the jury, not for the court, to determine whether the defendant shall pay exemplary damages even where there is evidence of malice. It is error for the court to charge that the defendant is liable in punitive damages if the publication is found to be libelous.

November 2d, 1884. Before 'MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

. ERROR to the court of Common Pleas No. 1, of *Allegheny county:* Of October and November Term, 1885, No. 129.

Case by W. H. Hope against L. and W. Neeb, proprietors of a German newspaper, *Freihert's Freund*, published in the city of Pittsburgh, to recover damages for the publication of an alleged libel on the plaintiff. Plea, not guilty.

On the trial of the case before COLLIER, A. L. J., the following facts appeared:

In the issue of 20th of January, 1883, of the *Freihert's Freund*, published in the German language, appeared an article of which the following is an English translation:

## ACCOUNT DEMANDED.

### A FORMER COUNTY OFFICIAL EXPOSES HIMSELF TO A PROSECUTION FOR LARCENY.

After the coroner has discharged the duties of his office he takes the contents of the pockets of the deceased, upon whose body he holds an inquest, or any other property which he finds in their possession for the purpose of delivering the same to their relatives, etc. In many cases the deceased is unknown and the property found remains in the hands of the coroner. In such cases said official frequently comes into possession of watches, revolvers and other valuable . objects. The law provides that at the expiration of his office the coroner shall deliver to the county commissioners all the property not claimed as aforesaid, who should sell the same at public auction and the proceeds thereof shall be paid into the county treasury.

The law considers these unclaimed articles of personal property as the property of the county. Any violation thereof is an offence of larceny. Coroner Hope has neglected to comply with the provisions aforesaid. It is not probable that a suit will be instituted against him. However, the public wishes to know what became of the property in his care and custody aforesaid. Sheriff McCallin, ex-county coroner, was asked in regard to the aforesaid subject matter, and in reply he says that during the period of his office it amounted to a considerable quantity of such property, which were of small value and were sold for sixty dollars.

[Neeb *v.* Hope.]

In the afternoon of January 19th, 1883, the court reporter of said newspaper was on his regular rounds to the different departments of the county government for the purpose of obtaining information proper for publication. When in the office of the county commissioners, on inquiry for news, the chief clerk of said commissioners related to the said court reporter substantially the facts set forth in the foregoing alleged libelous article. While the court reporter was at the commissioners' office and before the completion of the statements of the chief clerk, the clerk made inquiry of the only commissioner then present whether ex-Coroner Hope had made a return; the commissioner answered that he had not. After the reporter made further inquiry from Sheriff McCallin, a former coroner and immediate predecessor of Coroner Hope, as to the probable value of the goods in the possession of ex-Coroner Hope, the reporter arranged the article which was published in the issue of Saturday, January 20th, 1883. In the issue of said paper immediately following said publication the following article was published:

## EX-CORONER HOPE DENIES.

Ex-Coroner Hope declares that the announcement that he did not transfer the unclaimed property of deceased persons to the proper board as being a report without any truth to substantiate it whatever. When his successor entered upon his duties as coroner, Major Hope asked Commissioner Mercer what he should do with the property remaining in his possession, and the latter directed him to transfer it to Coroner Dressler, which he then did and received a receipt to that effect. A small sum of money was turned over to the county treasurer, who receipted for it. Coroner Dressler substantiates Major Hope's statement in every particular.

It also appeared that in 1879 William H. Hope, the plaintiff below, was elected coroner of Allegheny county, and entered on the duties of the office on the first Monday of January, 1880. He served during his term of office, which expired January 1st, 1883.

In the discharge of his duties as coroner he took possession of money and other valuables found on the bodies of deceased persons on whom he held inquests, and in all cases where proper parties showed their right to them these valuables were turned over and their receipts taken therefor.

In this way it happened that at the expiration of his term of office there remained in his hands about sixty-five dollars in money and various articles of personal property, consisting of

watches, keys, handkerchiefs and such other articles as are usually carried in people's pockets.

Being desirous of winding up the affairs of his office he had a list made of the articles remaining in his hands, and the amount of the money, and on the 30th day of December, 1882, he went to the office of the county treasurer, paid the money in his hands to the treasurer and took his receipt therefor. At the time he paid over this money one of the county commissioners, George Y. McKee, was present in the office.

On the same day he went to the office of the county commissioners and saw Mr. Mercer, one of the then board, to whom he said: "I have some effects in my possession that have not yet been called for, what will I do with them?"

Mercer inquired as to the custom, said they were in a hurry and told him to turn them over to his successor and to take his receipt therefor.

On Monday, the first day of January, 1883, he took the articles to the coroner's office, delivered them to Mr. Dressler, his successor in office, and took his receipt therefor.

The plaintiff requested the court to charge that if the defendants, before publishing the alleged libel, could have ascertained the facts to the contrary of the charge therein by reasonable inquiry and did not use due diligence in making the inquiry they are not excused by the law and are liable in punitive damages, if the publication is found to be libelous and the verdict should be for the plaintiff, in such an amount of damages as the jury may deem just in the premises.

Affirmed.   (First assignment of error.)

The defendant requested the court to charge:

1. The matter published is not *per se* libelous.

Refused.   This is for the jury to find.   (Second assignment of error.)

2. That the matter published and alleged to be libelous does not charge that the plaintiff was or is guilty of a criminal offence.

Refused.   This is for the jury.   (Third assignment of error.)

3. That the publishers neither assume or charge that the statements published are true or that plaintiff had in his possession or control either money or goods belonging to the county.

This is refused.   (Fourth assignment of error.)

4. If the jury find that the publication was a fair and correct reproduction of the statements made to the defendants' reporter by the chief clerk of the county commissioners and that the matter was proper for public information or investigation and that the publication was made in good faith and without malice, then plaintiff cannot recover.

[Neeb *v.* Hope.]

This is refused.   (Fifth assignment of error.)

The court in the general charge charged *inter alia* as follows: [What did this reporter do before this article was written? He says he went to the county commissioners' office; that there he found the chief clerk, who manages the general matters there, and asked him if there was any news—"anything to-day?"  At first, I believe, the clerk said: "Nothing," and after thinking a little while he said: "Yes; the coroner hasn't made a report."  The clerk says he stepped into the other room and spoke to one of the commissioners, Mr. McWilliams, who said there had been no report made, and he gave him that fact, and then on that fact, on the information he got there in that way, he wrote this article and published it the next day.

Now, if you say that that was such care, ordinary care, as was proper under the circumstances to justify this article, then the law says it is in the nature of a privileged communication and would be a defence.  You are to say that, was it negligence hearing that much and making no further inquiry?] (Sixth assignment of error.)

The court erred in sustaining the objection of the plaintiff's counsel to the offer by defendants' counsel, in evidence, the records of the Court of Quarter Sessions of Allegheny county at No. 308, December Sessions, 1883, Commonwealth *v.* L. & W. Neeb, for the purpose of showing that these defendants were prosecuted criminally for the identical alleged libel sued on in this case, in mitigation of damages.  (Seventh assignment of error.)

The court erred in the following portion of the charge to the jury, viz.:

A libel is defined to be a writing or picture that holds a man up to public contempt, ridicule or disgrace.  (Eighth assignment of error.)

Verdict for the plaintiff in the sum of $1,000, and judgment thereon, whereupon the defendants took this writ and filed the foregoing assignments of error.

*Frederick Luty* for the plaintiff in error.—In view of all the circumstances of this case, the court should not have left the question of punitive damages to the jury.   The exercise of due diligence by the reporter would have availed as a defence.  Insufficient diligence without express malice and without wanton or reckless conduct on his part, may justify compensatory, but not punitive damages.

In Rose *v.* Story, 1 Barr, page 197, Mr. Justice Rogers says, beyond compensation, upon no principle of law or equity, is the jury permitted to go unless in cases of gross oppression or

aggravation, when the jury may mulct the party in vindictive damages.

It is error to leave the question of punitive damages to the jury when there is no evidence which would warrant a verdict for other than compensatory damages: Pittsburgh Southern Railway Co. *v.* Taylor, 8 Out., p. 306; Odgers on Libel, page 301; Nagle *v.* Mullison, 10 Casey, 48.

In general the rule for the measure of damages in tort is actual compensation. Grossly negligent or malicious acts may be the subject of larger damages: Seely et al. *v.* Alden, 11 P. F. S., p. 302.

There was probable cause for the publication, no express malice, a bona fide intention, and for a good purpose: Chapman *v.* Calder, 2 Harris, p. 365; Odgers on Libel, 280.

The court erred in the following portion of the charge to the jury, viz.:

A libel is defined to be a writing or picture that holds a man up to public contempt, ridicule or disgrace.

The definition lacks in an essential element of libel, viz.: malice express or implied. This want is not supplied in any other part of the charge.

The Supreme Court has defined a libel to be "any malicious publication written, printed or painted, which by signs or words tends to expose a person to contempt, ridicule, hatred or degradation of character," and in the same case the Supreme Court said malice is a necessary ingredient in libel: Barr et al. *v.* Moore, 6 Norris, p. 385, opinion, p. 393; Greenleaf on Ev., Vol. 2, p. 407, sec. 411.

The circumstances of the publishing were such as to repel the inference of malice, or malicious intent, and ought to exclude any liability of defendants, unless upon proof of actual malice: Greenleaf on Evidence, Vol. 2, sec. 418.

The defendants were not guilty of any wrongful act done intentionally without probable cause.

The article was a bona fide statement concerning the acts of a public officer, from information received through an official source, in the regular course of business, after the exercise of ordinary care, with reasonable ground, or probable cause, for the belief that the information so received by the court reporter was true: Gray *v.* Pentland, 2 S. & R., 23; Chapman *v.* Calder, 2 Harris, p. 365.

*David D. Bruce* (with whom was *John F. Edmundson*) for the defendant in error.—Where a defendant has falsely charged the plaintiff with being guilty of an infamous crime the law presumes malice and the defendant is liable for exemplary or punitive damages.

[Neeb v. Hope.]

The plaintiff is not restricted to extrinsic evidence of malice, he may rely on the words of the libel itself and the circumstances attending its publication : Odgers on Libel, p. 276.

If indeed there were means at hand for ascertaining the truth of the matter, of which the defendant neglects to avail himself, and chooses rather to remain in ignorance, when he might have obtained full information ; this will be evidence of such wilful blindness as may amount to malice: Id., 277.

We claim that if the subject matter had any right of privilege, the reporter had gone beyond that right and forfeited it.

Rights must be exercised and duties performed strictly in good faith : Townshend on Libel, 89.

A person may exercise a right in such a way that it becomes a wrong : Id., same page, n ; see also Odgers on Libel, pages 279, 280.

Where the occasion is privileged and it is clear that the defendant believed in the truth of the communication he made, and was acting under a sense of duty, the plaintiff's counsel may still rely upon the words employed, and the manner and mode of publication as evidence.

But where the language used in a libel is much too violent for the occasion, and circumstances to which it is applied, or utterly beyond and inappropriate to the facts, or where improper motives are unnecessarily imputed, there is evidence of malice to go to the jury.

In Cook v. Ellis, 6 Hill, 466, the court held that vindictive damages might be recovered although the defendant had been indicted, convicted and fined $250 for the same offence ; and in Barr v. Moore, 87 Pa. St., 385, this court says, page 393 : The fact that an indictment may be sustained does not preclude the jury from giving vindictive damages. When the act is both a public and private wrong, the public and the person aggrieved each has a distinct and concurrent remedy.

Mr. Justice TRUNKEY delivered the opinion of the court, January 4th, 1886.

Any malicious publication, written, printed or painted, which by words or signs tends to expose a person to contempt, ridicule, hatred or degradation of character, is a libel ; and the person libeled may recover damages, unless it be shown that the publication was true, or that it was justifiably made : Barr v. Moore, 87 Pa. St., 385.

Malice is said to be essential to an action for libel, but it is malice in a special and technical sense, which exists in the absence of lawful excuse, and where there may be no spite or ill-will, or disposition to injure others. Every publication having the other qualities of a libel, if wilful and unprivileged, is in

law malicious. The publication of words actionable in themselves, is sufficient evidence of legal malice. Legal malice exists where a wrongful act is done intentionally. The proprietor of a newspaper, whether a natural person or a corporation, is liable for a libel contained in the paper, though without actual knowledge of the libel until after the publication. Where the defendant published words which injured the plaintiff's reputation, he must be taken to have intended the consequences naturally resulting therefrom, and the question whether the defendant acted maliciously or not, should not be left to the jury, unless the occasion be privileged : Barr *v.* Moore, supra; Odgers on Libel, 264–5.

At the trial of this action it appears that the court and parties agreed that the defendants had a right to make inquiries respecting plaintiff's official conduct, to make reasonable comment and fair criticism upon it, and that the matter published, if true, was proper for public information or investigation. The plaintiff's point indicates his contention that before publishing the alleged facts the defendants omitted reasonable care and diligence to ascertain their truth; and the defendants' fourth point avers, that if the publication was a fair statement of what was communicated to their reporter by the chief clerk of the county commissioners, and that if it was published in good faith and without malice, the plaintiff cannot recover. The court instructed the jury, that if the defendants made reasonable and diligent inquiry, using ordinary care to get the facts, and then published them with free comments, they are not liable; and if they exercised " such care, ordinary care, as was proper under the circumstances to justify this article, then the law says it was in the nature of a privileged communication, and would be a defence." But if such care was not used the defendants are liable, provided the jury find the article is libelous; and even if ordinary care was used, if the article went beyond the statement of facts, and charged the defendants with the crime of larceny, it was libelous.

In view of the evidence, said instructions were favorable to defendants. The plaintiff was a private citizen, neither in office nor a candidate for office, but the article related to what he had done as a public officer. Inquiry was only made of a clerk who had no connection with the coroner's office, and who was not a lawyer. It is proved that the alleged default in turning over to the proper officers the money and effects which remained in his hands at the end of his official term was false, and now the defendants do not pretend that the statements of fact or of law are true and correct. If, indeed, the publication was strictly privileged, and there was probable cause for the making of it, the action cannot be sustained; and if there

[Neeb *v.* Hope,]

were not probable cause the plaintiff could not recover in absence of proof of actual malice—malice signifying ill-will by the defendants towards the plaintiff, or a reckless disregard of his right of reputation. " Cases of privileged communications are to be treated in the same manner as actions for malicious prosecution. . . . . In all cases of libel, *prima facie* excusable on account of the occasion of uttering or publishing it, all the facts and circumstances of the case may be given in evidence by the defendant, to show probable ground and to rebut the idea of malice:" Chapman *v.* Calder, 14 Pa. St., 365. If the jury found that the publication charged the plaintiff with larceny, it is not strange that they failed to find that the defendants had used due care and diligence to ascertain the truth of the charge. Probable cause that would justify such publication would justify a prosecution for the alleged crime. The clerk stated no facts within his knowledge to warrant belief that the plaintiff had embezzled or stolen the money and goods which came into his hands as coroner; and he was not qualified to give professional advice or a legal opinion upon the facts he stated. He simply stated that Hope had not made a return of the effects which had come into his hands as coroner to the commissioners. That was no cause for belief that the ex-coroner was guilty of a criminal offence. Nor was it within the bounds of fair comment and criticism to misstate the law, and aver " that any violation thereof was an offence of larceny," and charge that " Coroner Hope has neglected to comply with the provisions aforesaid," and " exposes himself to a prosecution for larceny."

The defendants contend that if the publication was made in good faith and without malice, they are not liable. This would be so had the article been kept within proper limits. An occasion of privilege will not justify false and groundless imputations of wicked motives or of crime. The conduct of public officers is open to public criticism, and it is for the interest of society that their acts may be freely published with fitting comments or strictures. But a line must be drawn between hostile criticism upon public conduct and the imputation of bad motives, or of criminal offences, where such motives or offences cannot be justly and reasonably inferred from the conduct. A man has no right to impute to another whose conduct is open to ridicule or disapprobation, base, sordid or wicked motives, unless there is so much ground for the imputation that a jury shall find, not only that he had an honest belief in the truth of his statements, but that this belief was not without foundation. Where the public conduct of a public man is open to animadversion, and the writer who is commenting upon it makes imputations on his motives which arise

fairly and legitimately out of his conduct, so that a jury shall say that the criticism was not only honest, but well founded, an action is not maintainable. If a public writer fancies that the conduct of a public man is open to the suspicion of dishonesty, he is not therefore justified in assailing his character as dishonest, or charging him with a criminal offence: Campbell *v.* Spottiswoode, 3 Best & S., 769. "It cannot be claimed that there is any privilege in journalism which would excuse a newspaper, when any other publication of libels would not be excused. Whatever functions the journalist performs are assumed and laid down at his will, and performed under the same responsibilities attaching to other persons. Allowing the most liberal rule as to the liability of persons in public employment to criticism for their conduct in which the public are interested, there certainly has never been any rule which subjected persons, public or private, to be falsely traduced. The nearest approach to this license is when the vilified person is a candidate for an elective office, or addresses the public in open public meetings for public purposes. But even in such cases we shall not find support for any doctrine which will subject him without remedy to every species of malevolent attack:" Foster *v.* Scripps, 39 Mich., 376.

It is a matter of law for the court to determine whether the occasion of writing or speaking criminatory language, which would otherwise be actionable, repels the inference of malice, constituting what is called a privileged communication; and if there is no intrinsic or extrinsic evidence of malice, it is the duty of the court to direct a nonsuit or verdict for the defendant. If the communication contains expressions which exceed the limits of privilege, such expressions are evidence of malice, and the case shall be given to the jury: Cooke *v.* Wildes, 5 El. & Bl., 328; Hamilton *v.* Eno, 81 N. Y., 116. Falsehood and the absence of probable cause will amount to proof of malice: White *v.* Nicholls, 3 How., 266.

No request was made for instruction to the jury that the plaintiff must prove malice to maintain his action. The evidence thereof was ample for submission. The instructions of the court, as already seen, were as fair for the defendants as they could justly claim, so far as related to the plaintiff's right to recover. If the publication charged wicked motive or crime, unwarranted by the facts communicated to the reporter by the clerk of the county commissioners, the privilege was exceeded and the action would lie. Had the court said anything in reference to actual malice, the jury would have been instructed that they could find it from the falsehood of the charge and absence of probable cause.

That the court omitted the word malicious in defining libel

[Neeb v. Hope.]

was entirely harmless. The attempt to define it was in the portion of the charge that did not touch the question of privilege. If the writing held the plaintiff "up to public contempt, ridicule or disgrace," and was unprivileged, it was malicious, and the jury had no right to say otherwise. It was as unnecessary in such connection to use the word "malicious," as it is to prove malice in a case of libel when there is no justification of the publishing.

None of the assignments set forth error of which the defendants can complain, except the first. By affirmance of the plaintiff's point the jury were instructed that in case of negligence by the defendants in making inquiry as to the truth of the charge, they "are liable in punitive damages, if the publication is found to be libelous, and the verdict should be for the plaintiff in such an amount of damages as the jury may deem just in the premises." Aside from that, no instruction was given on the question of damages except what related to mitigation. Therefore, the jury must have understood that if the plaintiff was entitled to recover, the defendants should be punished. That the jury could properly give exemplary or punitive damages, if satisfied that the defendants wantonly or recklessly defamed the plaintiff, cannot be doubted; but if the defendants had no actual malice, evidenced by wanton or reckless conduct, it was not a case for punitive damages. Compensation for the injury done to the plaintiff's character is the legal measure of damages to which he is entitled. Hence the rule that a defendant may, if he can, in diminution of damages, prove the general bad character of the plaintiff at and before the time of the publication of the libel. It is for the jury, not the court, to determine whether the defendant shall pay exemplary damages, even when there is evidence of malice. Whenever the jury find that the defendant should pay smart money, they determine the amount, and it may be said to be added to the plaintiff's real damages.

In Hamilton v. Eno, supra, the court refused a request, namely, "that unless the defendant was moved by actual malice, it was not a case for punitive damages; and that the jury should give such damages as they thought the plaintiff had really borne." The Court of Appeals held that the request asked too much when it sought to limit the jury to the actual damage of the plaintiff—merely what he had proved in precise figures—and the court was not bound to take the good part of the request from the bad, and to charge the good. Although the first proposition in the request was sound, the whole was well refused because it contained an incorrect limit respecting the plaintiff's damages. In this case, had the word "punitive" been omitted from the plaintiff's point, there would

have been no error in its affirmance. Where the words are actionable in themselves the law requires no proof of actual injury to entitle the plaintiff to recover such amount as the jury may deem just, the only restriction being the power exercised by courts over verdicts.

> Judgment reversed, and venire facias de novo awarded.