Golden Slipper Square Club *v.* Golden Slipper
Restaurant & Catering, Inc., Appellant.

Argued April 18, 1952. Before DREW, C. J., STEARNE,
JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Irvin J. Kopf,* with him *Gabriel Berk,* for appellant.

*Norman H. Fuhrman,* with him *Victor H. Blanc* and *Stephen J. Korn,* for appellee.

OPINION BY MR. JUSTICE BELL, May 27, 1952:

Plaintiff, Golden Slipper Square Club, obtained an injunction against defendant, Golden Slipper Restaurant & Catering, Inc., enjoining the defendant from using the name "Golden Slipper" in conjunction with the operation of its night club, restaurant and catering business. From the decree granting an injunction the defendant has appealed.

The chancellor found the following facts: Plaintiff is a non-profit corporation with its principal offices at 213 S. Broad Street, Philadelphia. It has been in existence since 1924 and has now a membership of 1600 persons, predominantly from the Philadelphia area. It owns, maintains and operates the Golden Slipper Square Camp, a charitable summer camp for underprivileged children; a Milk Fund and a Coal Fund; it provides scholarships and outings for orphans; it gives aid to service men and to the needy poor; and it fosters achievement and service awards.

Plaintiff in order to raise funds for its charitable activities, holds one to three large-scale entertainments or shows each year in which stars of national fame in the entertainment field perform. In connection with these entertainments, plaintiff solicits advertisements for its program book from which it receives approximately $85,000 a year. Plaintiff also holds approxi-

mately eight meetings a year and at these meetings leading celebrities speak or perform and large contributions are solicited and received. In the last three years plaintiff has raised and distributed for charitable purposes over $350,000. It bears a splendid reputation, locally as well as nationally, and in metropolitan Philadelphia it has become known and identified as the "Golden Slipper" or "Golden Slipper Club".

The defendant is a business corporation engaged since March 1948, in the restaurant, catering and night club business, with its principal place of business at 715 W. Girard Avenue, Philadelphia. It was originally known as Congress Restaurant, Inc., but changed its name on or about October 15, 1948. The chancellor specifically found that *defendant changed its name "with the intent to trade upon the long-established good will and reputation of the plaintiff"*. Defendant has spent substantial sums of money in advertising its business. The words "Golden Slipper" or "Golden Slipper Club" which defendant sometimes used in its advertising are identified by the citizens of Philadelphia and its environs solely with the plaintiff. Defendant has likewise used the same symbol in its advertising and on its neon sign as the plaintiff has used in much of its printed matter, namely, the symbol of a golden slipper.

Members and non-members of the plaintiff organization have been confused as to the identity of the defendant and have frequently endeavored to ascertain if the plaintiff was operating the business of the defendant or had any connection with it; and on several occasions former contributors to the plaintiff organization have refused to make donations to the plaintiff because of such confusion until they learned that there was no relationship between the plaintiff and the defendant. Letters and bills intended for the defendant (which for a number of months was in a precarious financial condition) are frequently delivered to the plaintiff; sev-

eral times a week the plaintiff receives telephone calls intended for the defendant. "Use of the words 'Golden Slipper' by the defendant as part of its corporate name has bred confusion in the minds of the public as to whether or not the defendant is identified with the plaintiff".

There was no evidence that the plaintiff had sustained any actual financial damages or that its reputation had been actually affected or impaired.

The name "Golden Slipper" was not originated by the plaintiff, nor has its use been confined solely to the plaintiff. The song "Oh Dem Golden Slippers" has been frequently used by string bands of the Philadelphia Mummers since 1901. The name "Golden Slipper" had been registered by one Anna Taffler on September 14, 1927 for use in her hosiery business. The name "Golden Slipper" is also used by the manufacturer of "Golden Slipper" premium ginger ale. The defendant upon plaintiff's protest, promised to change its name but thereafter changed its mind, hence this suit.

It is important to note that the defendant adopted its name with intent to trade upon plaintiff's good will and reputation and that the name, symbol, advertising and activities of the defendant have bred confusion and deception and have threatened the standing, reputation and fund raising abilities of the plaintiff. If plaintiff and defendant were business corporations engaged in a similar business these facts would be sufficient to warrant injunctive relief: *KoolVent v. Price,* 368 Pa. 528, 84 A. 2d 296; *American Clay Manufacturing Co. v. American Clay Manufacturing Co.,* 198 Pa. 189, 47 A. 936; *Consolidated Home Specialties Co. v. Plotkin,* 358 Pa. 14, 55 A. 2d 404; *Hartman v. Cohn,* 350 Pa. 41, 38 A. 2d 22; Restatement, Torts, §729, comment f.

The acts and conduct of the defendant are reasonably likely to affect not only the plaintiff's identity, standing and reputation but also the amount of its contributions which are its life blood, and thus inevitably its charitable activities.

While it is a well established principle that "Descriptive, geographical and generic words, as well as words of common or general usage belong to the public and are not capable of exclusive appropriation by anyone"; it is equally well established that a name or label or symbol or trademark or other words may acquire a special or so-called secondary meaning and where that has occurred the Courts will protect it against infringement: *KoolVent v. Price*, 368 Pa., supra. While actual intent to deceive or defraud is not indispensable, it is an important factor to be taken into consideration and if the evidence shows as here that the name and symbol and the conduct or practices of the defendant actually confused and deceived and were adopted by defendant with an unfair and fraudulent intent to acquire some of its business by deceptively appearing to be a part of or connected with the plaintiff, that is sufficient to warrant relief: *American Clay Manufacturing Co. v. American Clay Manufacturing Co.*, 198 Pa. 189, 47 A. 936; *KoolVent v. Price*, 368 Pa., supra; *Stroehmann Brothers Co. v. Manbeck Baking Co.*, 331 Pa. 96, 200 A. 97; *Thomson-Porcelite Co. v. Harad*, 356 Pa. 121, 51 A. 2d 605.

We see no sound or salutary reason why a charity should not be entitled to the same protection as a business corporation, namely, the protection of its name, symbols, labels, reputation, membership, credit and activities. In *Societa, etc., v. Lombardo*, 350 Pa. 530, 39 A. 2d 581, this Court restrained Christopher Columbus Auxiliary, a charitable organization, from the use of such name at the suit of Christopher Columbus Society,

a charitable organization; and said that the same reasoning and principles apply to a non-profit corporation as to a business corporation in the protection afforded by the law against unfair competition or unfair practices.

In the case of *Grand Lodge Improved Benevolent & Protective Order of Elks of the World v. Grand Lodge Improved, Benevolent and Protective Order of Elks of the World, Inc.*, 50 F. 2d 860, quoted with approval in *Purcell v. Summers*, 145 F. 2d 979, it was said: "It is well established that a benevolent, fraternal, or social organization will be protected in the use of its name by injunction restraining another organization from using the same or another name so similar as to be misleading . . . . The reasons underlying the rule are thus stated in Nims on Unfair Competition and Trademarks (3rd Ed.)., §86: 'The fact that a corporation is an eleemosynary or charitable one and has no goods to sell, and does not make money, does not take it out of the protection of the law of unfair competition. Distinct identity is just as important to such a company, oftentimes, as it is to a commercial company. Its financial credit—its ability to raise funds, its general reputation, the credit of those managing it and supporting it, are all at stake if its name is filched away by some other organization, and the two become confused in the minds of the public.' " Similar reasoning and a similar decision has been applied to charitable corporations in *Most Worshipful Widows' Sons Grand Lodge of Ancient Free and Accepted Colored Masons of Pennsylvania, Inc., Case*, 160 Pa. Superior Ct. 595, 52 A. 2d 333, and *Cape May Yacht Club v. Cape May Yacht & Country Club*, 81 N. J. Equity, 454, 86 A. 972.

To warrant injunctive relief in behalf of a non-profit corporation in a case involving allegedly unfair competition or legally fraudulent practices, it is sufficient

if it proves that its name or identity has been endangered or lost, or that its standing or reputation has been or is reasonably likely to be damaged, or that there is an actual or a reasonable likelihood of loss of membership or of contributions or of its ability to raise funds or, that actual damages or substantial injury have actually been sustained or are reasonably likely to result from the unfair or fraudulent conduct of the defendant.

Decree affirmed; appellant to pay the costs.