## Dempsky, Appellant, v. Double.

Argued October 1, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

544

*Robert Engel,* with him *Coleman Harrison* and *Herbert G. Labbie,* for appellant.

*Walter T. McGough,* with him *Reed, Smith, Shaw & McClay,* for appellees.

Opinion by Mr. Chief Justice Horace Stern, November 27, 1956:

In this libel action the trial court entered a compulsory nonsuit which was affirmed by the court en banc, and plaintiff appeals.

In May, 1950, a so-called "free-work probe" was being conducted in the City of Pittsburgh. It consisted of an investigation into the possible misuse of public property by local officials, especially the use of county vehicles by county employees for private purposes, and it was much publicized at the time in the newspapers.

On May 9, 1950, one of the defendants, Esther Smith, wrote a letter to the Controller of Allegheny County as follows:

"Dear Sir:

"This seems to be an opportune time to bring certain facts to your attention, and, as a taxpayer, to ask for an immediate investigation and an explanation regarding the use of County cars and trucks by a County employee for hauling materials used in the remodeling of a house which he purchased in 1948 when said property was up for sale for taxes.

"In the summer of 1948, Mr. John Dempsky, a county employee purchased the Overholt property, located

at 7211 Thomas Boulevard, (and adjoining our property). . . .

"Ever since this property was purchased in the summer of 1948, Mr. Dempsky has used various County cars and trucks . . . to transport materials such as cement, lumber, plaster, lime, gravel, sand, pipe, coal, acetylene tanks for welding, etc. to this property at 7211 Thomas Blvd., and has used County cars to haul away the debris, ashes, leaves and rubbish in the yard, etc. etc. . . ."

There followed a statement of particular occasions on which County cars were parked, sometimes in the daytime, sometimes all night, in front of the plaintiff's property. The letter then proceeded:

". . . I think I have given you sufficient information to warrant an immediate investigation. . . .

"People are becoming more tax conscious every day, and are not going to stand idly by and see county employees appropriate county cars and equipment for their own personal and private use, to say nothing of time which is spent during working hours to transport materials in county cars.

Very truly yours,
(Signed) Esther Smith
(Mrs.) Esther Smith

Copy—Mrs. R. Templeton Smith, President Allegheny County League of Women Voters . . ."

John Dempsky, referred to in the letter, was an automobile mechanic employed by the County of Allegheny in a garage where county vehicles were kept and serviced.

Responding to the request for an investigation contained in the letter, the Controller conducted elaborate hearings extending over a period of several weeks, as a result of which he concluded that Dempsky had in

fact used county vehicles for his own private purposes in violation of county regulations, and that these violations were flagrant and occurred in connection with repairs and alterations being made on his property. On the basis of the Controller's report to that effect the County Commissioners discharged Dempsky from his employment. He then brought the present libel action against Esther Smith and her sister Alma Double.

At the trial plaintiff argued that Mrs. Smith's letter accused him of the larceny of county materials, but the court rejected this contention and correctly held that the letter charged only the improper use of county vehicles and contained no allegation of theft; accordingly the court excluded evidence offered to show that plaintiff had not stolen anything. It was, of course, the duty of the court to determine as a matter of law whether the language used in the alleged libelous publication could fairly and reasonably be construed to have the meaning imputed to it in the innuendo, and an innuendo cannot be used to introduce new matter, or to enlarge the natural meaning of the words and thereby give to the language a construction which it will not bear: *Naulty v. Bulletin Co.*, 206 Pa. 128, 55 A. 862; *Sarkees v. Warner-West Corporation*, 349 Pa. 365, 37 A. 2d 544.

The reason for the entry of the nonsuit was that, in the opinion of the court, the circumstances giving rise to the writing of the letter constituted a conditionally privileged occasion as a matter of law and that plaintiff had not presented any evidence to show an abuse of that privilege, as, for example, that the writer was actuated by malice. A privileged communication is one made upon a proper occasion, from a proper motive, in a proper manner and based upon reasonable

and probable cause (*Conroy v. Pittsburgh Times,* 139 Pa. 334, 21 A. 154; *Matson v. Margiotti,* 371 Pa. 188, 196, 88 A. 2d 892, 896), and it is always for the court to determine whether the alleged defamatory publication is thus privileged; if found so to be, and if there be no intrinsic or extrinsic evidence of malice, it is the duty of the court to direct a nonsuit or give binding instructions for the defendant: *Neeb v. Hope,* 111 Pa. 145, 154, 2 A. 568, 572; Restatement, Torts, §619. Here the court pointed out that in view of the extensive probe then being conducted and its public importance a communication by a private citizen to a public official, expressing an honest belief that an employee under his control or supervision was misusing public property entrusted to his charge, and suggesting that such an apparent violation of the law be investigated, completely justified it as a privileged communication; (Restatement, Torts, §598). The Controller testified as to his authority and investigative powers into all matters dealing with county business, and that he was engaged in making several similar investigations at the time. Nor was there any evidence of actual malice on the part of Mrs. Smith which would have deprived the publication of its privileged character, and therefore no question in that regard to be submitted to the jury.

Plaintiff makes something of the fact that a copy of the letter to the Controller was sent to the Allegheny County League of Women Voters, an organization which is presumably a civic-minded group of women active in the interests of good government in the Pittsburgh area. But the object of sending it the copy was obviously in order to have it cooperate in the request for an investigation and was thus intended to serve, not a private motive, but the public welfare. For that

548

purpose it enjoyed the same conditional privilege as the original letter to the Controller.

It remains only to add that, as far as Alma Double is concerned, she not only was not a signatory to the letter, but there was no evidence whatever that her sister wrote it with her knowledge or consent or on her behalf. No inference of agency arises from their mere family relationship.

Judgment and order affirmed.