Dutch Pantry, Inc., Appellant, *v.* Shaffer.

Argued May 6, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

*Leonard R. Apfelbaum,* with him *Laird S. Gemberling,* for appellant.

*Michael Kivko,* with him *Horace W. Vought,* for appellee.

*Sidney Apfelbaum,* with him *Joseph F. Ingham,* for appellee.

OPINION BY MR. JUSTICE BOK, May 28, 1959:

Preliminary objections have been sustained in both of these cases, and since the legal principles are the same and only the pleaded facts differ somewhat, we will consider them together.

It should be made clear at the outset that the scope of our review is narrowed to the question of whether or not summary judgment was proper. The law is plain that such disposition should be made, especially when it has the effect of putting the plaintiff out of court, only in cases that are clear and free from doubt: *London v. Kingsley,* 368 Pa. 109; 81 A. 2d 870 (1951); *Adams v. Speckman,* 385 Pa. 308; 122 A. 2d 685 (1956).

It is interesting to note that none of the cases cited by the court below to support its action or by counsel for appellee in No. 141 to support its argument was disposed of by summary judgment. All were decided after hearing. Counsel for appellee in No. 140 has cited some older Federal cases to the effect that a motion to dismiss should be granted when it is clear that under no state of the evidence could plaintiff make out

a case of infringement and hence it would be idle to go farther. The monitor that he cites for this rule is *Van Camp Sea Food Co. v. Westgate Sea Products Co.,* 28 F. 2d 957, C.C.A. 9th (1928).

Applying this measure to the pleaded facts, it is obvious that the court below was in error.

In both cases the court has taken from the Restatement, Torts, §729, the following apparatus by which to determine whether the defendants' designations are confusingly similar to the plaintiff's:

"(a) The degree of similarity between the designation and the trademark or tradename in (i) appearance; (ii) pronunciation of the words used; (iii) verbal translation of the pictures or designs involved; (iv) suggestion; (b) The intent of the actor in adopting the designation; (c) The relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other; (d) The degree of care likely to be exercised by purchasers." See also *Thomson-Porcelite Co. v. Harad,* 356 Pa. 121, 51 A. 2d 605 (1947).

The complaint in No. 140 lists some of the points of similarity between the two restaurants as follows:

"A. The name of your plaintiff's restaurant is the 'Dutch Pantry' and that of the defendants is 'Dutch Kitchen Restaurant';

"B. The object of both restaurants is precisely the same, to wit, the preparation and serving of foodstuffs to the public generally;

"C. The names of both restaurants appear on the marquees and are of the same color, size, and design;

"D. The outward appearances of both restaurants are similar in that both have constructed marquees, under which the public is required to enter their respective restaurants;

"E.   Both restaurants employ, for design, a trough or space filled with shrubbery throughout the front of the respective buildings;

"F.   Both restaurants employ the use of a Dutch girl figure prominently displayed on the front of the respective buildings;

"G.   Both restaurants employ the same type and color of wood, glass, and plastic in their respective marquees;

"H.   Both restaurants are located in Snyder County, Pennsylvania, along U. S. Highway Route 11-15."

The complaint in No. 141 has a similar list:

"A.   The name of your plaintiff's restaurant is 'Dutch Pantry'. That of the defendant is 'Miracle Dutch Treat'; with another name prominently displayed entitled 'Dutch Kitchen Cookin' ';

"B.   The object of both restaurants is precisely the same, to wit, the preparation and serving of foodstuffs and meals to the public generally;

"C.   The names of both restaurants appear prominently on the premises and are of the same size;

"D.   Defendant has constructed and maintained a windmill on her premises, and plaintiff has a trade-marked windmill on its premises;

"E.   Both restaurants are located in Monroe Township, Snyder County, Pennsylvania, on the eastern side of U. S. Routes 11-15;

"F.   Defendant has de-emphasized the name 'Miracle' in her fictitious name of 'Miracle Dutch Treat'."

The court below limited its consideration of similarities in both cases to the names, and it assumed the duty of the fact-finder in saying, also in both cases: "there is no similarity in appearance, pronunciation, sound, or meaning." These are not matters of law.

We are unwilling to take judicial notice that the phrase "Pennsylvania Dutch" has only one meaning or

that it is a compound of factors whose meaning can be apprehended in only one way. Rather, we may take judicial notice of the historical and ethnic fact that the word "Dutch" itself is wrongly used, since it refers not to the only people who have a right to it, namely. the citizens of The Netherlands, but to those whose ancestors were Swiss or Palatinate Deutsch, or German. It cannot, therefore, follow irresistibly that everything connected with the central Pennsylvania area which loosely uses the word "Dutch" must be of one type and not of another. The Dutch girl and the windmill involved here may depict the local variety or the Netherlands, the German, or the Swiss.

Even without such precision of origin, there are the differences in shape, style, color, size, and arrangement of the restaurants, including the marquees, the windmills, the signs, the Dutch girls, and the shrubbery beds. And in dealing with a colorful and concentrated area such as the "Pennsylvania Dutch country", the use of the key word, "Dutch", raises at once the possibility of establishments, if they otherwise resemble each other, being under the same management. It might even be regarded as a word ordinarily belonging to the public but through special local circumstances acquiring a secondary meaning: *Golden Slipper Square Club v. Golden Slipper Restaurant & Catering, Inc.*, 371 Pa. 92; 88 A. 2d 734 (1952). In *Hartman v. Cohn*, 350 Pa. 41; 38 A. 2d 22 (1944), the name "Dundee" was held to have acquired a special meaning and was given protection.

The other features of the restaurants therefore acquire critical importance in the basic issue of whether the public has been misled and confused. That issue is peculiarly one of fact, since it represents a congeries of sense perceptions in the traveler. Such an issue rarely lends itself to summary judgment. After the

trial and the establishment of the comparative facts, the applicable rules may have to be applied more strictly than they can be at the present stage of the proceedings, when we face nothing more substantial than the impossibility of being dogmatic about factors over which men may disagree.

In short, it cannot be said that under no state of the evidence as foreshadowed by these complaints could plaintiff make out a case.

As Mr. Justice BELL said in *KoolVent Metal Awning Corp. v. Price,* 368 Pa. 528; 84 A. 2d 296 (1951): "All that is necessary is that the court shall find from the evidence that the name or mark or label, or the conduct and practices of the defendant actually confused and deceived or that it is reasonably likely that the average purchaser will be deceived." There should be a hearing to fix such elements of fact.

The judgment is reversed in each case, with a *procedendo.*

---

DISSENTING OPINION BY MR. JUSTICE BELL:

In *KoolVent Metal Awning Corp. v. Price,* 368 Pa. 532, the Court said: "The law in this class of cases is well established; its application to different facts and circumstances is sometimes difficult. *Descriptive, geographical and generic words, as well as words of common usage or general belong to the public and are not capable of exclusive appropriation by anyone* . . . Even though a word a phrase or mark has acquired a special or secondary meaning [and there was no averment by complainant that its name had acquired a special or secondary meaning], *the right of protection does not extend a monopoly to every word in the name,* but the protection will be afforded only against names or marks which are deceptively similar thereto and consequently

are likely to confuse the public: Quaker State Oil v. Steinberg, 325 Pa. 273."

No one can possibly acquire an exclusive right, appropriation, trade-mark or trade name in or to the use of the word "Dutch", especially in Pennsylvania Dutch country, nor, I believe, to the figure of a Dutch windmill, or even a Dutch girl.

The similarity or dissimilarity of the names is the most important factor or test in determining the basic issue of violation of a trade name. An example will make this strikingly clear. If the Washington "Senators" filed a bill to enjoin the New York "Yankees" from using that name since it would likely mislead, confuse and deceive baseball fans, because both teams play baseball; they use the same baseballs and the same ball parks; their gloves and bats are of the same design, color and size; they have the same number of players; they play under the same rules and at times under the same lights; and they have the same umpires. In spite of all these similarities, any judge could decide from the name alone—without the aid of a jury, and without watching the teams play—that the buying public would not be misled or deceived into mistaking the Yankees for the Senators, or even vice versa.

The name, "Miracle Dutch Treat," is so very dissimilar to "Dutch Pantry, Inc.", as to enable the Court to say that it is clearly *not* deceptively similar to "Dutch Pantry, Inc.", and it certainly is not likely to confuse or deceive the eating public. In other words, even a stranger in Pennsylvania Dutch country would instantly know—without the aid of a jury or even a judge—that a "Pantry" is very different from a "Miraacle Treat."

For these reasons I would affirm the judgment of the lower court in *Dutch Pantry, Inc. v. Miracle Dutch Treat.*