## Zimmerman, Appellant, *v.* B. & C. Motel Corporation.

Argued May 3, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*John T. Synnestvedt,* with him *Alfred C. Aurich,* for appellant.

*Kennard N. Ware,* with him *Charles M. Allen,* and *Irving W. Coleman,* for appellee.

OPINION BY MR. JUSTICE BOK, September 26, 1960:
This complaint in equity asking for an injunction was nonsuited, under Pa. R. C. P. 1512, and plaintiff

appealed after his rule to strike off the nonsuit was discharged and his complaint dismissed. The court's final action was taken without prejudice.

Plaintiff owns and operates two motels, both at the Pennsylvania Turnpike in the Harrisburg area, one at Exit 15 and the other at the Route 230 by-pass. Both have been variously named, but all designations contained the key word "Holiday" until they are now established as "Holiday West" and "Holiday East". West was opened in 1953, East in 1957.

Holiday West is a quarter of a mile long. Both motels together represent an investment of over two million dollars and have all modern facilities such as restaurants and swimming pools. One has a revolving stage. Plaintiff advertises them extensively in trade issues and maintains road signs within fifty miles on the Turnpike and adjacent highways. He was the first in the State to use the word Holiday for a motel.

In 1958 defendant opened "Holiday Inn", also a motel, on U. S. Route 22 near the Lehigh Valley Interchange of the Northeast Extension of the Turnpike, in the Allentown area. It is 75 to 80 miles distant from "Holiday East" and 85 to 90 miles from "Holiday West". Two years before, defendant signed a license agreement with Holiday Inns of America, Inc., a Tennessee corporation then operating motels locally in Memphis but with ambition to establish by license and uniform regulations a national string of motels. Defendant maintains billboards on the Turnpike Extension but not near the plaintiff's locations.

Both parties cater to the public that travels by automobile.

The complaint being one of unfair competition, the question is whether the parties are competing in the same market, and, if they are, whether plaintiff has a position that he can defend against invaders.

There come to mind at once the many National, Grand, Palace, Congress, Station, Railroad, Ambassador, and Mayflower Hotels that dot the nation, and it is likely that the public does not confuse them because the effective distinction is one of locality. The same hospitality is not necessarily expected in the Congress Hotel in Portland, Maine, as in the Congress Hotel in St. Louis, Missouri. The plaintiff suggests that it is different with modern turnpikes and long-distance driving, and founds his case on long-haul competition only: to the traveler from Arizona to Maine, he mentions as example, the distance between Harrisburg and Allentown is negligible and the competition for his patronage real. Plaintiff does not suggest the presence of local competition as the basis for relief.

We agree with the plaintiff that proof of fraudulent intent in the defendant is not essential nor is proof of financial loss or damaged reputation, or proof of actual deception, tendency to deceive being enough in a proper case: *American Clay Manufacturing Co. v. American Clay Manufacturing Co.*, 198 Pa. 189 (1901), 47 A. 936; *Thomson-Porcelite Co. v. Harad*, 356 Pa. 121 (1947), 51 A. 2d 605; *Golden Slipper Square Club v. Golden Slipper Restaurant & Catering, Inc.*, 371 Pa. 92 (1952), 88 A. 2d 734; *Goebel Brewing Co. v. Esslingers, Inc.*, 373 Pa. 334 (1953), 95 A. 2d 523.

Here our agreement with the plaintiff ceases.

We are not dealing with a trademark or a trade name, like Kool-Vent (*KoolVent Metal Awning Corp. v. Price*, 368 Pa. 528 (1951), 84 A. 2d 296) or Porcelite (supra, 356 Pa. 121), where we must determine whether there is sufficient similarity in the competing sign to amount to unfairness. Here we have a straight English word, holiday, and to decide whether its repetition by a competitor is unfair we must apply a different rule.

There is no question of what this rule is. It is set forth in the *KoolVent* case, supra (368 Pa. 528) as follows: "Descriptive, geographical and generic words, as well as words of common or general usage belong to the public and are not capable of exclusive appropriation by anyone. This general principle is subject to the limitation or exception that if a trade name or trade-mark or other word or words have acquired, in the trade and in the minds of the purchasing public, a special or so-called secondary meaning, i.e., have come to mean that the article is the product of a certain manufacturer or of a particular individual or corporation, such trade name or trade-mark or word or words will be protected against infringement . . ."

It is obvious that a secondary meaning cannot appear unless there is evidence of it, and there is none before us except a charge of $5 sent once by a utility company to plaintiff by mistake. As the court below indicated, one swallow does not make a summer. Since plaintiff began suit five years after opening Holiday West, it is interesting to note that in *Quaker State Oil Refining Co. v. Steinberg,* 325 Pa. 273 (1937), 189 A. 473, five years of marketing and national advertising was held not enough to associate the plaintiff's name with his product. We said: "The only evidence from which it could be inferred that the name of complainant's product had acquired a secondary meaning prior to 1919 is that its product has been marketed and had been nationally advertised for five years under this name. There is no other evidence from which it could be inferred that the public associated 'Quaker State' or 'Quaker' with the complainant's product at that time. 'The mere adoption and use of words in advertisements, circulars and price lists and on signs and stationery give no exclusive right to their use': DeLong Hook & Eye Co. v. Hump Hairpin Mfg. Co., 297 Ill. 359, 364,

130 N.E. 765. See also Continental Corp. v. National Union Radio Corp., 67 F. (2) 938, 942. 'It is an accepted principle of the common law that mere advertising is insufficient to establish trade-mark use': Derenberg, supra, p. 505."

There are other cases where dictionary words have been used. In *Peters v. Machikas*, 378 Pa. 52 (1954), 105 A. 2d 708, the plaintiff used "Majestic Restaurant" and the defendant "Majestic Grille", and an injunction issued: the plaintiff had used the key word for over thirty years. In *Hartman v. Cohn*, 350 Pa. 41 (1944), 38 A. 2d 22, plaintiff for twenty-six years had used "Dundee" in connection with his clothing and successfully enjoined the defendant who advertised as "Dundee Clothing Factory Sales Room". In the *Quaker State* case, supra (325 Pa. 273), we said, quoting from Nims, Unfair Competition and Trade-Marks (2nd ed.), p. 106: " 'When the word is incapable of becoming a valid trade-mark, because descriptive or geographical, yet has come by long use to stand for a particular maker or vendor, its use by another in this secondary sense will be restrained as unfair and fraudulent competition, and its use in its primary or common sense confined in such a way as will prevent a probable deceit by enabling one maker or vendor to sell his article as the product of another . . .' "

We reject plaintiff's contention that he can preempt the word "Holiday" in Pennsylvania against all comers or that he can use it and expect protection from the courts because he might in future be harmed through use of it by someone else. Only evidence of a secondary meaning could aid him. To credit his argument, anyone could corner common English words simply by using them, and that has never been the law. The words do not confer meaning on the enterprise; the enterprise must confer meaning on the words.

Beyond this, we agree with the court below that the parties are not operating in the same market. The motels in question are too far apart for realistic competition, and we note that the letters and telegrams offered by the plaintiff as addressed to him are all but one addressed to "Holiday Inn", which rather puts him unfairly in competition with defendant if the evidence is to be credited at all. As for the mythical motorist from Arizona, he can be reduced to absurdity by starting him from Alaska and asserting that all Holiday motels on the eastern seaboard are in competition for him.

We need not reach the question of what protection, if any, defendant has achieved by contracting with the Tennessee corporation. Suffice it to say that plaintiff has not met his burden of proof, and hence must fail.

We approve the lower court's leaving the case without prejudice, in case the parties extend their facilities in this rapidly expanding industry.

The decree is affirmed, costs to be paid by the appellant.

Mr. Justice BELL dissents.