Biggans, Appellant, v. Foglietta.

Argued January 9, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Walter Stein*, with him *Berger and Stein*, for appellant.

*George P. Williams, III*, with him *Schnader, Harrison, Segal & Lewis*, for appellee.

OPINION BY MR. JUSTICE BOK, May 2, 1961:

This is an action in libel. The court below sustained preliminary objections and dismissed the complaint on the ground that the communication in question enjoyed absolute privilege. The plaintiff has appealed.

The amended complaint alleges that the plaintiff was a public officer, namely, Chairman of the Plumbing Advisory Committee of the Department of Licenses and Inspections of the City of Philadelphia; that the defendant falsely and maliciously wrote libellously to the Mayor of the City about the plaintiff; that the letter was "first published through the Philadelphia headquarters of the Republican Party"; and that he has been injured in his business, his reputation, and his peace of mind. The amended complaint quoted the letter.

The preliminary objections reveal that the original complaint attached a copy of the letter, complete with letterhead showing defendant to be a councilman-at-large of the City Council and his office at Room 600 City Hall, and that the letterhead was missing from the amended complaint.

The issue of whether the letter is libellous is not before us. Both sides assume for argument that it is and present us only with the issue of privilege and its abuse.

Libel and slander go unscathed when privileged, on the theory that it is better that an individual be harmed than that the public go uninformed about the public business: *Montgomery v. Philadelphia*, 392 Pa. 178 (1958), 140 A. 2d 100, esp. footnote at 184 quoting Chief Judge LEARNED HAND; *Montgomery v. Dennison*, 363 Pa. 255 (1949), 69 A. 2d 520. In order to be privileged, "A communication . . . must be made upon a proper occasion, from a proper motive and must be based upon a reasonable and probable cause." *Briggs*

*v. Garrett,* 111 Pa. 404 (1886), 2 A. 513; *Gray v. Pentland,* 2 S. & R. 23 (1815). In *Dempsky v. Double,* 386 Pa. 542 (1956), 126 A. 2d 915, involving a letter written by a private citizen to a public official concerning another public official, we said: "The reason for the entry of the nonsuit was that, in the opinion of the court, the circumstances giving rise to the writing of the letter constituted a conditionally privileged occasion as a matter of law and that plaintiff had not presented any evidence to show an abuse of that privilege, as, for example, that the writer was actuated by malice. A privileged communication is one made upon a proper occasion, from a proper motive, in a proper manner and based upon reasonable and probable cause (Conroy v. Pittsburgh Times, 139 Pa. 334, 21 A. 154; Matson v. Margiotti, 371 Pa. 188, 196, 88 A. 2d 892, 896), and it is always for the court to determine whether the alleged defamatory publication is thus privileged; if found so to be, and if there be no intrinsic or extrinsic evidence of malice, it is the duty of the court to direct a nonsuit or give binding instructions for the defendant: Neeb v. Hope, 111 Pa. 145, 154, 2 A. 568, 572; Restatement, Torts, §619."

Only the facts and circumstances can determine whether there is privilege, abuse of privilege, or no privilege. Here the face of the complaint shows that publication was not on the floor of City Council but "through" a political headquarters. We are of opinion that under such circumstances a City Councilman may enjoy conditional privilege and is open to attack for malice or other abuse, for which we regard the allegation of publication as thin but adequate.

There are few cases dealing with privileged statements in legislative bodies at the level of city and borough councils, and they are collected in 40 A.L.R. 2d 933, annotating *Mills v. Denny,* 245 Iowa 584, 63 N.W. 2d 222 (1954).

In Pennsylvania, in *Montgomery v. Philadelphia,* 392 Pa. 178 (1958), 140 A. 2d 100, we said: "However, even though a public officer, in the first instance, establishes the existence of a privileged occasion for a defamatory publication, he may nevertheless be subject to liability if a plaintiff meets the burden of persuading the factfinder that the occasion was abused by showing that the defamatory communication was made for an improper motive, in an improper manner, or was not based upon reasonable or probable cause. . . . The question of whether a privileged occasion was abused is for the determination of a jury unless the facts are such that but one conclusion can be drawn.

"To meet this contingency, the defense of *absolute privilege,* or complete immunity from liability for the publication of defamation was created.

" '*Absolute privilege,* as its name implies, is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, *provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it [is] sometimes expressed, within his jurisdiction. . . .'* Matson v. Margiotti, supra, 371 Pa. at 193-194." (Original emphasis.)

All that we can tell from the complaint before us is that a libellous letter was written on defendant's official stationery and was first published "through" a political headquarters, i.e., not on the floor of City Council, and this allegation removes the possibility of absolute privilege. Imagination can conjure up a dozen scenarios to indicate conditional privilege or the lack or abuse of it, but the plaintiff need not plead his evidence, and it is ancient law that summary judgment may be entered only in clear cases: *Dutch Pantry, Inc. v. Shaffer,* 396 Pa. 102 (1959), 151 A. 2d 621.

The order is reversed, cum procedendo.

CONCURRING OPINION BY MR. JUSTICE BELL:

If a deputy commissioner of public property of Philadelphia and a city architect are entitled to absolute privilege—and in *Montgomery v. Philadelphia,* 392 Pa. 178, 140 A. 2d 100, this Court held that they were entitled to *absolute* privilege—I believe that a Councilman of the City Council of Philadelphia, who is a higher and more important public official, is entitled to absolute privilege. However and in any event the majority has in my judgment confused the scope of absolute or unlimited privilege with the tests for conditional or limited privilege. See: *Matson v. Margiotti,* 371 Pa. 188, 88 A. 2d 892; and *Montgomery v. Philadelphia,* supra.

In *Matson v. Margiotti,* supra, the Attorney General of Pennsylvania sent a letter to the District Attorney of Allegheny County concerning Mrs. Matson, who was an Assistant District Attorney of Allegheny County. The letter accused her of being a Communist, a statement which was libelous per se.[*] The Court in its opinion pertinently said (pages 193, 194, 198, 202, 203-204, 205):

"The defendant would nevertheless have two possible defenses: (a) Truth: [Citing cases] and (b) Privilege. . . .

"Privilege has been divided into two kinds, (1) absolute or unlimited, and (2) conditional or limited.

"Defendant contends he is entitled to 'absolute privilege' and hence absolute immunity from civil suit. *Absolute privilege,* as its name implies, is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, *provided the statements are made or the actions are taken in the course of the official's duties or powers*

---

[*] We note that a Committee of the Allegheny County Bar cleared Mrs. Matson of any charge of Communism.

*and within the scope of his authority, or as it [is] some-times expressed, within his jurisdiction:* [Citing numerous authorities]." (We note parenthetically that this definition of absolute privilege was reiterated and quoted with approval in *Montgomery v. Philadelphia, 392* Pa., supra, pages 182-183.)

*". . . If the Attorney General was entitled to abso-lute privilege, his personal or political motives are im-material as is the presence of malice or want of reason-able and probable cause:** Spalding v. Vilas, 161 U. S. 483.

. . .

". . . We specifically hold that this official letter, being written by a public official in the course and within the scope of his powers, was 'absolutely privi-leged'; and that even if the allegations were erroneous and false, and were maliciously made, this privilege was absolute and constituted a complete defense to Mrs. Matson's action of libel.

. . .

"One other point has given us grave concern: Was the immediate delivery to the press by the Attorney General of a copy of his letter, *prior to its delivery,** to the District Attorney—a regrettable practice pur-sued by high ranking officials whose victims first learn their fate by radio or press—incidental to and hence entitled to the same absolute privilege as the letter, or was it outside the scope of the Attorney General's offi-cial duties or powers and therefore entitled only to a conditional privilege? Here once again we have com-peting rights: the right of the individual to be pro-tected in her property and reputation, and the right of the public to be kept informed of the official ac-tions of their public officials.

---

. . .

\* Italics, ours.

". . . We therefore hold that under the facts in this case the delivery to the public press of the letter of the Attorney General to the District Attorney of Allegheny County dated January 5, 1951, was within the protection of the absolute privilege accorded in this case to the Attorney General."

In *Montgomery v. Philadelphia,* supra, the Court said* (page 183) : "Whereas qualified privilege could be successful only after a full trial, thus placing a government official at the whims and mercy of a jury, the purpose of absolute immunity is to foreclose the possibility of suit. '. . . [A]bsolute immunity is designed to protect the official from the suit itself, from the expense, publicity, and danger of defending the good faith of his public actions before a jury. And yet, beyond this lies a deeper purpose, the protection of society's interest in the unfettered discharge of public business and in full public knowledge of the facts and conduct of such business. Absolute immunity is thus a means of removing any inhibition which might deprive the public of the best service of its officers and agencies.' Note, 20 U. of Chi. L. Rev. 677, 679 (1953)."

Furthermore, if privilege is absolute, malice is immaterial, as is mailing or publicizing of an official letter after it was sent but before it was delivered to the addressee. (Cases, supra).

It is very difficult if not impossible to tell from plaintiff's complaint whether defendant abused and thus lost his right to absolute privilege, or if his privilege was conditional whether he violated his conditional privilege.

---

* The majority's quotation from the Court's opinion in the *Montgomery* case, which was in turn taken from *Dempsky v. Double,* 386 Pa. 542, 126 A. 2d 915, and from *Montgomery v. Dennison,* 363 Pa. 255, 69 A. 2d 520, concerned and *involved only conditional* privilege.

I therefore concur in the majority's action in remanding the case to the lower Court for further proceedings, but I would require plaintiff to file a more specific complaint setting forth with particularity *all* the important essential facts.*

---

\* If, as appears from plaintiff's amended pleadings (which, inter alia, omitted one or more essential facts which appeared in his original complaint), plaintiff has purposely omitted vital facts, he is deserving of censure for such reprehensible conduct; defendant, in my judgment, pursued a regrettable practice if he had the letter to the Mayor published before its delivery to the Mayor.