Anthony P. PINO, Plaintiff,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant,

v.

LIMERICK GARDEN OF MEMORIES, INC., Third Party Defendant.

Civ. A. No. 86–2939.

United States District Court, E.D. Pennsylvania.

June 1, 1988.

Richard J. Orloski, Allentown, Pa., for plaintiff.

A. Richard Feldman, Bazelon, Less & Price, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

Presently before the Court are defendant Prudential Insurance Company's motion for partial summary judgment, plaintiff Anthony Pino's and third party defendant Limerick Garden's appeal from an order of the Magistrate and their motion for summary judgment on defendant's counterclaim/third party complaint.

### I FACTS

Plaintiff Anthony Pino is a licensed insurance broker and president of the third party defendant corporation, Limerick Garden of Memories. This lawsuit arose from Pino's activities in connection with both of his business activities.

Joseph and Viola Arch, who had made "pre-need" burial arrangements with Limerick Garden of Memories, were also Prudential life insurance policy holders. In August, 1985, Pino visited the Arches in their home to discuss the possibility of their purchasing space in a new mausoleum being constructed in Limerick Garden. The Arches ultimately decided to exchange their prior arrangements for the mausoleum option. There was, however, a discrepancy in the costs of the two burial plans. Either in response to Pino's suggestion or because they had already decided to do so, the Arches determined to cash in their Prudential policies and use at least part of the proceeds thereof to pay for the new burial arrangements. To implement their decision, they assigned their policies to Limerick Garden. Pino, on behalf of Limerick Garden, directed Prudential to cancel the Arches' policies and remit all cash values to Limerick Garden, the assignee.

Subsequently, Pino, as an authorized agent for Northwestern National Life Insurance Company, sold the Arches new life insurance policies written by that company.

Upon receipt of the surrender requests, the Prudential home office contacted Luci Gerhard, its agent who serviced the area where the Arches lived. She met with them on several occasions. As a result of their initial meeting, the Arches stopped payment on the check they had given Pino to purchase the new policies and sought to rescind their transaction with Pino with respect to the surrender of their Prudential policies.

After further contact with Pino, however, and additional meetings with Gerhard, the Arches concluded that they would continue on the course they had begun after their original contacts with Pino, *i.e.,* the surrender of the Prudential policies and purchase of Northwestern policies.

As a result of Gerhard's contacts with the Arches and complaints she made about Pino to the Pennsylvania Insurance Department and professional organizations of insurance underwriters, Pino brought this action against Prudential in which he alleges a cause of action for defamation. Pino originally claimed to have suffered financial losses as a result of Gerhard's activities on behalf of Prudential, but has now abandoned that allegation as well as his claim for interference with contract. He still seeks damages for injury to his reputation which resulted in emotional distress.

Prudential filed a counterclaim against Pino and a third party complaint under Fed.R.Civ.P. 13(h) against Limerick Garden alleging intentional interference with business relations through a pattern and practice of inducing Prudential policy holders to cash in their Prudential policies for burial expenses and purchase alternative life in-

surance policies from companies represented by Pino.

## II APPEAL FROM THE MAGISTRATE'S ORDER

█ Since a portion of the Magistrate's order from which plaintiff and third party defendant have appealed directly impacts their motion for summary judgment against Prudential, the Court will address that motion first.

Prudential sought discovery of four kinds of information which became the subject of the Magistrate's order when plaintiff resisted the requests. Claiming that his abandonment of any damage claim for economic injury rendered the information sought irrelevant for purposes of this case, Pino has refused to disclose information regarding his income. With respect to a second category of information, transactions with Prudential policy holders other than the Arches, Pino contended before the Magistrate, and contends here, that such information is not readily available to him and that an already produced list of Prudential policy holders who assigned their policies to Limerick Garden is sufficiently responsive. With respect to Limerick Garden price lists for burial items from 1985 to 1987, Pino and Limerick Garden contend that those lists have been produced. Defendant Prudential seeks a sworn statement from Pino and/or his counsel to that effect if all such price lists have been produced as contended in unsworn documents. Finally, Pino objects to the Magistrate's order that he produce to Prudential copies of various reports which are required by state regulatory agencies, arguing that such information is readily available to Prudential as public records.

As noted earlier, Pino and Limerick Garden do not assert any new or additional legal grounds for resisting the discovery ordered by the Magistrate. Rather, they reiterate the same arguments advanced previously and do not even attempt to demonstrate any way in which the Magistrate's rejection of those arguments is clearly erroneous or contrary to law. This Court regularly refers discovery matters to the Magistrate pursuant to Fed.R.Civ.P. 72(a) and, when called upon to do so, reviews orders arising from those referrals according to the standards set forth in Rule 72(a). Consistent with the rule and its purpose, however, the Court does not consider *de novo* the arguments of counsel raised before the Magistrate and rejected by him, nor do we consider additional arguments which do not demonstrate that his decision is clearly erroneous or contrary to law. Consequently, having had no such errors cited and finding none upon our consideration of the order and its legal bases, we will affirm the order of the Magistrate in all respects.

## III SUMMARY JUDGMENT

As we begin our consideration of the remaining motions, for summary judgment on various issues, it is helpful to set forth the applicable standards. Although recently clarified by the Supreme Court in *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the basic principles governing the grant of summary judgment pursuant to Fed.R.Civ.P. 56(c) remain unchanged. Summary judgment may be granted only when there are no material issues of fact in dispute and the moving party is entitled to judgment as a matter of law. In *Anderson,* the Supreme Court noted that a factual issue is genuine only if a reasonable jury could return a verdict for the nonmoving party upon its consideration of the conflicting facts and is material when it might affect the outcome of the case under the substantive law applicable to the claim. Moreover, under *Celotex,* when a motion for summary judgment has been made and properly supported by the party which does not bear the burden of proof, the party opposing the motion must demonstrate that it can produce sufficient evidence to establish every element of its case in order to avoid summary judgment. The Court of Appeals for the Third Circuit has recently construed that requirement to mean that the party defending against a summary judgment motion based upon an issue as to which it bears the burden of proof, also bears the burden of culling from the evidence of record and identifying

for the Court facts sufficient to contradict the facts identified by the movant which suggest that there are no genuine issues of fact in dispute. *Childers v. Joseph*, 842 F.2d 689, 694–95 (3d Cir.1988).

## IV MOTION BY PINO AND LIMERICK GARDEN

With the foregoing standards in mind, we first consider Pino's and Limerick Garden's motions for summary judgment on Prudential's counterclaim/third party complaint. The movants argue that because the Prudential policies could be cashed in at will and policy holders are free to terminate their relationship with Prudential at any time, there can be no intentional interference with business relations; that where a third party with an at-will contract was induced to terminate it for his own financial benefit, the conduct of the alleged inducer is absolutely privileged; that the facts reveal that, as to the Arches, the decision to cash in the Prudential policies was made before Pino contacted them in August, 1985, so that he merely implemented their prior decision. Consequently, neither he nor Limerick Garden interfered with the contract as a matter of fact. Finally, Pino and Limerick Garden assert that any incidents or contacts other than with the Arches should be excluded by the Court as irrelevant to the counterclaim and third party complaint.

Consistent with the standards governing the disposition of summary judgment motions, as set forth above, we must determine, for this diversity action, the law of Pennsylvania applicable to claims for interference with business relations to determine, in light of the substantive law, whether the movants are entitled to judgment as a matter of law with respect to the legal arguments made in support of summary judgment. We will, of course, also determine whether there are any genuine issues of material fact in dispute which would preclude summary judgment.

Since 1978, Pennsylvania courts have relied upon the Restatement (Second) of Torts § 767 in adjudicating claims for interference with existing contracts or prospective contractual relations. *See, Adler, Barish, Daniels, Levin, Etc. v. Epstein*, 482 Pa. 416, 393 A.2d 1175, (1978), *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979), *Yaindl v. Ingersoll Rand Co., Etc*, 281 Pa.Super. 560, 422 A.2d 611, (1980). In *Franklin Music v. American Broadcasting Companies*, 616 F.2d 528 (3d Cir.1979), the Court of Appeals for the Third Circuit indicated that the Pennsylvania courts would, in the appropriate case, also apply Restatement (Second) of Torts § 768, which sets forth specifically when competition is proper and improper.

■ Under § 768, where a contract is terminable at will and concerns a matter over which two persons compete for the business of a third person, the inducement not to enter into a contract or to terminate an existing contract at will is not improper so long as, "the actor does not employ wrongful means and his action does not create or continue an unlawful restraint of trade." Restatement (Second) of Torts § 768(1), (1)(b), (c) (1979). It is obvious here that, with respect to Pino, the relation in issue concerns a matter over which Prudential and he compete, *viz.*, selling life insurance policies. The contract at issue is terminable at the will of the third person, the insured. Consequently, there can be no improper interference unless Pino employed wrongful means, his actions created an unlawful restraint of trade or his purpose was simply to injure Prudential rather than to advance his interest in competing with it. § 768(1)(a)(d).

Prudential alleges only that Pino employed wrongful means to induce its policy holders to cash in their existing policies and purchase other policies from him. Specifically, it points to Pino's failure to supply to the Arches certain documents required by Pennsylvania law and enumerates other statements that he made to them, characterized by Prudential as misrepresentations, which caused them to cease dealing with Prudential.

■ Prudential correctly contends that Limerick Garden, the assignee of the Arches' policies cannot invoke the competition privilege of § 768 since it does not sell life insurance policies. Thus, Limerick Garden's conduct must be measured

against the standards set forth in Restatement (Second) of Torts § 767, adopted by the Pennsylvania Supreme Court in *Adler, Barish*, 393 A.2d at 1184. The inquiry focuses on the propriety of the actor's conduct with reference to the following factors:

 (a) the nature of the actor's conduct,

 (b) the actor's motive,

 (c) the interests of the other with which the actor's conduct interferes,

 (d) the interests sought to be advanced by the actor,

 (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

 (f) the proximity or remoteness of the actor's conduct to the interference and

 (g) the relations between the parties.

Thus, while it is true that competitors are privileged to attempt to persuade customers of another to deal with them instead of the other and thus terminate a contract at will, the privilege is not absolute as a matter of law as the movants appear to argue.[1] Moreover, as noted, the special competition privilege is not applicable at all with respect to Limerick Garden. Finally, there is no basis in the law as presently applied by Pennsylvania courts for the argument that there can be no interference with a contract at will.

Thus, the foregoing legal bases upon which the movants rely do not support summary judgment on the counterclaim/third party complaint. Obviously, since the movants relied upon erroneous legal standards, they did not attempt to demonstrate that they are entitled to summary judgment under the correct standards, nor could they do so on the factual record before the Court.

■ Next, we consider the contention that, as a factual matter, the record reveals that no interference with business relations occurred. It is true that, at least in part, the deposition testimony of the Arches, taken July 15, 1987, indicates that they had decided to cash in their Prudential policies before they met with Pino. *See,* Motion for Summary Judgment of Third Party Defendant Limerick Garden of Memories, Doc. # 20, Exh. A, Deposition of Joseph Arch at 13; Exh. B, Deposition of Viola Arch at 13. It is also true, however, that Pino's own deposition testimony, taken May 13, 1987, suggests that it was he who first broached the subject of assigning and cashing in the Prudential policies to pay for their mausoleum spaces. *See,* Motion of Defendant The Prudential Insurance Company for Partial Summary Judgment, Doc. # 34, Exh. 1, Deposition of Anthony Pino at 28, 29. While it would be possible to reconcile the conflicting testimony and conclude, as the movants argue, that the Arches had definitely decided to cash in their policies with Prudential before their meeting with Pino, it is also reasonable to infer from the testimony as a whole that the witnesses' recollection may have been faulty on that point or colored by subsequent events.

The deposition testimony could also support the inference that the deponents did not fully understand the competing claims made by either Pino or Lucy Gerhard regarding the transaction. Moreover, the testimony as a whole does not support the inference that the deponents' recall of details is flawless and certain. Prudential is entitled to probe the recollection and credi-

---

1. Although we have addressed this argument in terms of the legal standards relating to the limits of the competition privilege under the Restatement (Second) § 768 with respect to Pino and the general standards of § 767 with respect to Limerick Garden, which we believe would be applied by the Pennsylvania courts in this situation, we understand the movants to be relying upon § 766 of the Restatement of Torts. Those standards would apply to both Limerick Garden and Pino without regard to their competitive status. We decline to apply those standards here for two reasons. First, the cases upon which the movants rely to support their argument predate the Pennsylvania Supreme Court's adoption of the Restatement (Second) in *Adler, Barish.* Second, a grant of summary judgment on that basis would require the Court to determine the factual issue assumed in the movants' argument, *i.e.,* that the exchange of insurance policies was of financial benefit to the Arches. That factual conclusion has certainly not been conceded by Prudential, nor has there been any evidence presented from which the Court could draw such an inference with the certainty required for summary judgment.

bility of the the witnesses at trial and to have a jury determination of whether there was any interference with business relations in the first instance and, if so, whether such interference was improper. Consequently, summary judgment is not appropriate on the basis of unequivocal facts demonstrating that no interference occurred.

The movants' final argument in support of summary judgment on the counterclaim/third party complaint concerns the propriety of producing evidence and seeking relief with respect to Pino's and Limerick Garden's contacts with Prudential policyholders other than the Arches. While it is technically not necessary to decide this issue at this time in light of our dispositions of the other grounds for summary judgment, it is one which will likely arise again before trial. Moreover, our decision on this issue is directly related to the discovery ordered as a result of our disposition of the appeal from the Magistrate's order.

■ Pino's and Limerick Garden's position in their summary judgment motions is that Prudential's interference with business relations claim is limited to the incident with the Arches since the plaintiff's defamation claim arose from that transaction. This reasoning ignores the provisions of Fed.R.Civ.P. 13(b) & (h), pursuant to which the counterclaim and third party complaint were brought. Subsection (b) of Rule 13 provides that, "A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." The counterclaim alleges a pattern and practice by Pino of inducing Prudential policy holders to cash in their Prudential policies to pay for burial arrangements and then purchase life insurance policies from him to replace the Prudential policies. Prudential further alleges two specific instances of such interference, one of which is the Arch transaction. Thus, while that particular incident did arise from the same transaction as plaintiff's claim and could be termed a compulsory counterclaim under subsection (a) of Rule 13, the entire counterclaim has never been confined solely to that transaction.

The joinder of Limerick Garden, accomplished through the filing of a third party complaint, was substantively a joinder of additional parties on the counterclaim pursuant to subsection (h) of Rule 13, as noted by this Court's order permitting the third party complaint. *See,* Order of November 18, 1986, Doc. #11. Under Rule 13(h), "Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with Rules 19 and 20." As noted, this Court previously concluded that Limerick Garden was properly joined in the action pursuant to the applicable rules.

■ It is readily apparent from the foregoing that there is no basis for Pino's and Limerick Garden's contention that Prudential may not seek to prove interference in other transactions. Moreover, it would be manifestly unfair to conclude at this time that the movants are nevertheless entitled to summary judgment as to such claims because Prudential has not produced evidence of any other transactions. Because of their insistence that they had sufficiently responded to discovery requests designed to uncover other transactions between Pino and Limerick Garden and Prudential insureds, the movants have refused to produce documents which might support such claims in response to Prudential's discovery requests. The discovery dispute was not resolved until our decision, today, affirming the Magistrate's order. Thus, a summary judgment motion based upon lack of evidence is not ripe for disposition at this time. If, after discovery has been completed, Prudential has failed to adduce sufficient evidence to support claims for other instances of interference with business relations, consistent with the summary judgment and substantive law principles previously explained here, Pino and Limerick Garden are free to renew their motions.

## V PRUDENTIAL'S MOTION

The final motion before the Court at this time is Prudental's motion for partial summary judgment on Pino's defamation and

punitive damages claims. Initially, we note that both types of defamation claims are included in Pino's complaint. He alleges that Prudential's representative, Luci Gerhard, slandered him in her conversations with the Arches and other clients and colleagues and that she wrote and circulated a libelous letter concerning his transactions with the Arches.

As before, it will be helpful to begin our consideration of the parties' contentions by reviewing the substantive law applicable to the claims. The legal standards for libel and slander do not differ. Recently, the Pennsylvania Supreme Court, in *Baker v. Lafayette College*, 516 Pa. 291, 532 A.2d 399 (1987), reviewed the law applicable to the initial consideration by the Court of all defamation claims. It is the Court's task to determine whether the statements complained of are capable of defamatory meaning, *i.e.*, whether they tend to blacken the person's reputation or expose him to public hatred, ridicule or contempt or injure him in his business or profession. In that regard, the Court must evaluate the effect the statement is calculated to produce in the minds of the audience to whom the defamatory remarks are directed. In addition, the statement must be evaluated in context. Statements of pure opinion are not actionable unless they may reasonably be understood to imply the existence of undisclosed defamatory facts upon which the opinion is based.

Once the Court has determined that a statement is capable of defamatory meaning, the plaintiff has the burden of proving the following elements:

(1) The defamatory character of the communication

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

*Marcone v. Penthouse International Magazine for Men*, 754 F.2d 1072, 1077 (3d Cir.1985), *citing* 42 Pa.Con.Stat. § 8343(a) (1982). *Agriss v. Roadway Express, Inc.*, 334 Pa.Super. 295, 483 A.2d 456, 461 (1984).

## A. SLANDER

With respect to the allegedly slanderous comments made by Gerhard, Prudential advances several arguments in support of its motion for summary judgment. It contends first that Pino has no evidence of any oral statements made by Gerhard concerning him except for what she said to the Arches and to Robert Weigner, President of the Pottstown Association of Life Underwriters in 1985. Second, Prudential asserts that it has produced evidence that Gerhard's statements to Weigner concerning Pino were not defamatory. Finally, as to the Arches, Prudential contends that Pino's reputation was not damaged. These arguments will be considered *seriatim*.

At his deposition, Pino asserted that, as a result of Luci Gerhard's contacts with professional associations for insurance agents, one of his colleagues approached him at church and questioned him about the "trouble" he was in. Pino admitted, however, that he had no knowledge of whether Luci Gerhard was the source of what his colleague had heard about him or what Gerhard had said if she was the source of the information. Indeed, Pino could not be certain that the incident referred to by his colleague involved Prudential at all. *See*, Exh. #2 to Doc. #34 at 111—114. With respect to several other conversations which Gerhard allegedly had with certain individuals, Pino could not be certain that they concerned him or what, if anything, she may have said about him. *Id.* at 117—119.

These enumerated incidents cannot support a slander claim against Prudential. Plaintiff has made no effort to secure evidence to support the assumptions and surmises to which he testified at his deposition. Once the defendant challenged the plaintiff's allegations and demonstrated a lack of factual support therefor, the plaintiff was obliged to come forward with evi-

dence to support his claims. On the record before the Court, there is no basis for determining whether any statements were made to the persons identified in plaintiff's deposition at all, much less whether any such statements, if made, are capable of defamatory meaning. Moreover, there is nothing in the record to suggest that Pino could put before a jury any evidence to support the elements of a defamation claim even if the Court were to assume that statements capable of defamatory meaning were made by Gerhard.

As to Weigner, Prudential produced his sworn declaration in which he states that Gerhard said nothing to him in their conversations concerning Pino which was defamatory. While that statement is a conclusion of law and inappropriate for a declaration intended to be used in the same manner as an affidavit, Weigner specifically asserts that Gerhard never accused Pino of wrongdoing. *See*, Exh. # 16 to Doc. # 34. Plaintiff has apparently made no effort to ascertain from Weigner the actual contents of any conversations Weigner had with Gerhard. The only evidence before the Court on this point, other than Weigner's declaration, is Pino's assertion that Weigner told him in a telephone conversation that Gerhard had accused Pino of "wrongdoing". *See*, Exh. # 2 to Doc. # 34 at 119. Thus, the alleged slander communicated to Weigner is on the same footing as the other statements identified at Pino's deposition. The Court is unable to make the threshhold determination of whether any statements made by Gerhard to Weigner are capable of defamatory meaning in the face of Weigner's denial that Gerhard accused Pino of "wrongdoing", Pino's only basis for asserting that Gerhard made defamatory statements to Weigner. As noted previously, it is plaintiff's obligation, in defending a summary judgment motion, to come forward with sufficient evidence to demonstrate that a jury question is presented.

■ With respect to that aspect of the slander claim involving statements made to the Arches, Prudential appears to concede that they are capable of defamatory meaning, and indeed, that plaintiff has presented evidence in the form of the Arches' deposi-

tions which could support a jury verdict on all of the elements of a defamation claim except that of harm to the plaintiff. Prudential contends that Pino's reputation was not harmed because the Arches testified to their high regard for him. While that is true according to the deposition testimony, it is also true that after their initial contact with Luci Gerhard, the Arches believed that Pino may not have acted in their best interests, indeed, had taken advantage of them. *See, e.g.*, Exh. A to Doc. # 20 pp. 9—12; Exh. B, pp. 55–58. Prudential has provided no legal support for the argument that temporary harm, *i.e.*, damage to reputation that is ultimately repaired, is not thereafter actionable. The Court can find no basis in the law for the conclusion that harm suffered as a result of defamatory statements must persist for a certain period of time in order to support a triable claim. While it is true that the circumstances existing here may significantly undercut any award of damages should the plaintiff prevail at trial, that possibility is not a basis for granting summary judgment. Thus, as to the allegedly slanderous statements made to the Arches by Luci Gerhard, summary judgment will be denied.

### B. LIBEL

■ Next, we consider Pino's claim based upon the allegedly libelous letter which Gerhard wrote and sent to the Pennsylvania Insurance Commission and professional organizations of insurance agents. Prudential first contends that the statements in the letter which Pino identified as defamatory are not actionable in that they are statements of pure opinion which follow a recitation of the facts of the transaction with the Arches. As such, Prudential contends that the letter cannot support a libel claim. That legal argument is accurate as far as it goes, but ignores the situation arguably present here.

At his deposition, Pino was asked to identify the statements he considered defamatory and he did ultimately identify the "opinion" paragraph. He also, however, pointed out statements which he contended were inaccurate, and indeed, in the light of

the entire record before us, we can identify other possible inaccuracies, discussed, *infra*. If this Court were to ignore inaccuracies and conclude that, because the writer used them to support an opinion, the letter is not libelous as a matter of law, we would exalt form over substance. It would be absurd to hold that an opinion based upon disclosed facts is absolutely protected even if those facts are false or inaccurate and known to be so by the writer.

True, the record supports, for the most part, the facts contained in the letter. Nevertheless, based upon the entire record before us, we conclude that, in the light of all the testimony, a jury could find that the language used in presenting the facts and the inclusion of inaccurate details were intended to create the impression that Pino's actions were more sinister than, in fact, they were. The letter, therefore, is not absolutely privileged as a statement of pure opinion and could support a libel claim.

Prudential also asserts another basis for claiming an absolute privilege. Because it was directed to the Pennsylvanaia Insurance Commission in the first instance, with copies also sent to private organizations with an interest in maintaining ethical professional standards in the insurance industry, Prudential asserts that there can be no liability based upon its limited publication.

 With respect to the Pennsylvania Insurance Commission, Prudential is correct. The Pennsylvania statute prohibiting unfair insurance practices, 40 Pa.Stat.Ann. § 1171.1 et seq. (Purdon 1987), provides that there shall be no liability for statements made in complying with the act. *Id.,* § 1171.6. That provision was given an expansive reading by the only court which appears to have considered the parameters of it. *DeMoss v. Metropolitan Life Insurance Co.,* 586 F.Supp. 1571 (W.D.Pa.1984), *aff'd,* 760 F.2d 256 (3d Cir.1985). After reviewing the standards for interpreting remedial legislation under Pennsylvania law, the language of the statute and its legislative history, the court councluded that, "Pennsylvania law recognizes 'no cause of action' against an insurer who complies with the Act and exempts from liability those acting with the insurer to comply with the Act." *Id.* at 1575.

Although the Court concludes that the letter at issue is capable of defamatory meaning and contains some hyperbole and inaccuracies which might support a finding that it was, in fact, defamatory, we also conclude that its publication to the Insurance Commissioner cannot be a basis for liability. We are not here required to decide whether the statutory immunity imposed by the Pennsylvania legislature extends to completely false accusations, since the record supports the essential accuracy of many of the facts recited in the letter. The Insurance Commissioner is capable of conducting an impartial investigation of Pino's actions with respect to the Arch transaction and filtering out whatever color might have been added to the facts by an outraged competitor who lost business to him. In any event, the breadth of the language in the immunity provision leads to the firm conclusion that the legislature determined that public policy is best served by encouraging vigilant scrutiny of even arguably questionable insurance practices. As an aid to accomplishing that objective, the legislature chose to immunize anyone who provides information suggesting violations of the Unfair Insurance Practices Act, including competitors who might exaggerate and dramatize an incident which may be in violation of the law, be that possible violation slight or great, substantive or technical. We see no reason to limit the choice to provide absolute immunity from liability in such instances.

 Prudential argues that the same standard should also apply to publication of the letter to professional organizations because it is in the public interest that information fostering compliance with the Unfair Insurance Practices Act be supplied to private industry groups as well as to the Insurance Commissioner. This Court cannot accept Prudential's unsupported assertion that the absolute immunity conferred by the statute also extends, for public interest reasons, to complaints made to professional organizations such as those contacted by Gerhard. Prudential points to

nothing in the statute which suggests that any entity other than the Insurance Commissioner is responsible for enforcing the act, nor does it cite any statutory authority or legislative history whatsoever to support its position on this issue.

While we disagree with Prudential that an absolute immunity applies as to the publication of the letter to the professional groups to which Pino belongs, we conclude that, as to such groups, a conditional privilege applies. The groups contacted by Gerhard do serve the public interest by promoting high standards of professionalism in the insurance industry. To hold that complaints to such groups are not at least conditionally privileged would undercut their purpose and their effectiveness. We find support for this conclusion both in the case cited by Prudential, *Dempsky v. Double*, 386 Pa. 542, 126 A.2d 915 (1956) and in a much more recent case, *Geyer v. Steinbronn*, 351 Pa.Super. 536, 506 A.2d 901 (1986).

In *Dempsky,* the court determined that the writing of a letter to a county official to complain of misuse of county property by a county employee was a conditionally privileged occasion as a matter of law and that the privilege extended to an additional publication to the League of Women Voters since the purpose of sending the letter there was to enlist the League's aid in seeking an investigation of the matter. The court also concluded that the plaintiff had failed to adduce any evidence of abuse of the privilege. In addition, the court explained the concept of "privilege" and indicated the circumstances which would constitute "abuse of privilege":

> A privileged communication is one made upon a proper occasion, from a proper motive in a proper manner and based upon reasonable and probable cause, and it is always for the court to determine whether the alleged defamatory publication is thus privileged; if found so to be, and if there be no extrinsic or intrinsic evidence of malice, it is the duty of the court to direct a nonsuit or give binding instructions for the defendant.

386 A.2d at 546.

In *Geyer,* the superior court did not alter the essential elements of "privilege" and

"abuse of privilege" but did provide more specific guidance as to when abuse of a privileged occasion may occur and a more specific meaning of the term "malice". Relying upon the Pennsylvania defamation statute, 42 Pa.Con.Stat.Ann. § 8344, the court held that the trial court had properly instructed the jury that abuse of a conditional privilege can occur with respect to a private figure plaintiff in a defamation case upon proof that the allegedly defamatory matter was published either maliciously or negligently. The court further approved the trial court's decision not to use the term "malice" in its charge to the jury. Instead, the trial court instructed the jury that the abuse of a conditionally privileged occasion occurs when the jury finds that a defamatory communication was published intentionally, recklessly or negligently, with each of those terms defined for the jury.

 Applying these standards, this Court, unlike the *Dempsky* court, cannot conclude that, as a matter of law, there was no abuse of the conditional privilege in this instance. Admittedly, in discussing the immunity applicable to the publication of the letter to the Insurance Commissioner, we noted that many of the facts contained in the letter are true. We also noted, however, that the allegedly libelous letter in question commingles some unquestionably true facts with others which have been challenged by the plaintiff or identified by the Court as possibly false or inaccurate and as to which there is deposition testimony which could support a different version of the facts. Moreover, the structure of the letter itself and the manner in which it presents the facts suggests a scenario somewhat different from the uncontroverted facts.

For example, Gerhard first states that she became aware of the incident involving Pino and the Arches through her policy holders, the Arches. Then follows a description of Pino's initial contact with the Arches and their ultimate purchase of another life insurance policy, followed by the statement that, "I was made aware of this situation ... by the Prudential Home Of-

fice" and the further statement that she then contacted the clients and they told her the story. All of the foregoing are true statements, but they suggest that the Arches made the initial contact with the Prudential Home Office who then contacted Gerhard, implying thereby to the reader that the Arches were the ones who first questioned the transaction. In fact, Prudential initially knew only that Arches had assigned their policy to Limerick Garden which had submitted a request to cash it in. It was Prudential who then sent Lucy Gerhard to the Arches in an admitted effort to "preserve the business".

Further, Gehrhard implies that the Arches became very upset upon being informed that Pino had failed to give them a Comparative Statement as required by Pennsylvania law and after Gerhard showed them a comparison between the Prudential policy and the policy sold to them by Pino. They both testified, however, that they became upset when Gerhard told them that they had no life insurance as a result of their dealings with Pino. They also testified that they knew that they had assigned their Prudential policy to allow Pino to handle the surrender for them. In her letter, Gerhard states that they were unaware of the implications of the assignment.

It is certainly conceivable that a jury will find that the inaccuracies are inconsequential, as the Court has concluded they are for purposes of the immunity provision of Pennsylvania's Unfair Insurance Practices Act. It is also conceivable that a jury will not see in the letter an implication that the Arches initiated the contact with Prudential. The point is that different inferences may be drawn, some of which would support liability, some of which would not. On summary judgment, absent the application of a statutory immunity, the Court is required to draw all inferences in favor of the non-moving party. Hence, our conclusion that summary judgment must be denied as to publication of the letter to the professional organizations.

**2.** That conclusion is of little significance in the aftermath of *Geyer*, however. There the Pennsylvania Superior Court decided that the actual

### C. PUNITIVE DAMAGES

At long last, we reach the final issue, Prudential's contention that it is entitled to summary judgment on Pino's claim for punitive damages for the publication of the allegedly libelous letter. Prudential notes, correctly, that punitive damages in a defamation action may be awarded only if the plaintiff proves that the statement determined by the jury to be libelous was made with "actual malice", defined as knowledge of its falsity or with reckless disregard for the truth or falsity of it. That standard was first identified by the United States Supreme Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). As the Pennsylvania Superior Court noted in *Geyer*, that standard always applies when the defamatory statement concerns a matter of public concern. As we stated earlier, we conclude that the letter at issue here does bear upon a legitimate public concern, the maintenance of high professional standards among those who sell insurance.[2]

Consistent with our earlier discussion of the truthfulness of the letter and the legal standards applicable to the award of punitive damages, we decline to eliminate that claim at this stage of the proceedings. At trial, the jury will be required to determine the truthfulness of the letter in light of all the evidence presented and in conjunction with its evaluation of the credibility of the witnesses. Should it find that the letter supports the libel claim in that it, on balance, contains a false and defamatory description of the Arch transaction and that Gerhard was merely negligent in her recitation and arrangement of the facts, that finding could support an award of compensatory but not punitive damages. If, on the other hand, the jury finds that Gerhard intentionally or recklessly conveyed a false impression of the transaction, the jury may then, if it chooses, also award punitive damages.

### VI SUMMARY

In deciding the various issues raised by the motions before us, it was necessary to malice standard, defined as it was in *Gertz*, applies to all defamation claims.

consider very carefully and in some detail the law applicable to claims for defamation and interference with business relations. That being the case, the Court decided to make an effort to simplify and delineate the issues remaining for trial, rather than to simply explain and support our decisions on the motions. In this way, we hope to guide the parties in their preparation for the final disposition of this case. As an additional aid in that process, we here summarize our decisions and set forth a timetable to govern the final stages of this action.

First, Pino and Limerick Garden are ordered to comply, immediately, with the Magistrate's order that they produce the documents sought by Prudential in its successful motion to compel discovery. The Court expects discovery to be completed within thirty days of the entry of the Court's order and any further motions arising from and supported by such discovery to be filed within an additional thirty days.

Second, the parties are directed to inform the Court, as soon as discovery is completed and the need for additional motions determined, whether this case remains subject to this district's arbitration program. If no additional motions are to be filed, the Court expects to be contacted within forty-five days of the entry of the accompanying order.

Third, plaintiff's and Limerick Garden's motion for summary judgment will be denied. We have concluded that Prudential's interference with business relations claim as to the Arch transaction should be tried. Subject to the possibility that the discovery ordered by the Magistrate and affirmed here will reveal no factual basis for additional instances of interference and to a proper motion based thereon, Prudential is also free to try such additional claims.

Fourth, the Court concludes that oral statements made by Lucy Gerhard to the Arches and the letter she wrote are capable of defamatory meaning.

Fifth, Prudential's motion for summary judgment will be granted in part and denied in part. Summary judgment is granted as to any claim based upon oral statements allegedly made to anyone except the Arches because of Pino's failure to produce any evidence that any such allegedly defamatory statements were made to other persons.

Prudential's motion for summary judgment as to any claim based upon the letter written by Lucy Gerhard and distributed to the state insurance commissioner is granted. The motion is denied as to the letter's publication to professional organizations of insurance agents and underwriters based upon our conclusion that the privilege attaching to such publications is conditional and that the evidence produced in support of and in opposition to the summary judgment motion indicates that a jury question is presented with respect to whether there was an abuse of the conditional privilege.

Since the caselaw in the Pennsylvania courts indicates that the "actual malice" standard applicable to punitive damages is the same as one of the possible bases upon which the jury may find that Prudential abused a conditionally privileged occasion, we decline to preclude the claim for punitive damages at this stage of the proceedings.

### ORDER

AND NOW, this 1st day of June, 1988, upon consideration of the various motions of the parties and the responses thereto, IT IS ORDERED:

1. That the appeal from the order of the Magistrate, Doc. # 37, is DENIED.

2. That the motions for summary judgment on the counterclaim/third party complaint, Doc. ## 20 and 21, are DENIED.

3. That Prudential Insurance Company's motion for summary judgment, Doc. # 34, is GRANTED IN PART AND DENIED IN PART in accordance with the accompanying Memorandum.

IT IS FURTHER ORDERED that the parties shall comply with the discovery and motion timetables set forth in said memorandum unless otherwise directed by the Court in response to timely requests, based upon good cause.